## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| CHELSEA E. ANSTEAD,<br>individually and on behalf of all<br>others similarly situated, | : <br> : <br> : <br> : | **Collective Action Complaint** |
| Plaintiff, | : <br> : | |
| v. | : <br> : | **Jury Trial Demanded** |
| SACRED HEART HEALTH<br>SYSTEM, INC.; ASCENSION<br>HEALTH, INC.; ASCENSION<br>HEALTH ALLIANCE, INC.; and<br>JOHN DOES 1-10, | : <br> : <br> : <br> : | |
| Defendants. | | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Chelsea E. Anstead ("Plaintiff"), individually and on behalf of all persons similarly situated, brings this collective action for unpaid overtime compensation against her employers, Sacred Heart Health System, Inc. ("Sacred Heart"), Ascension Health, Inc., Ascension Health Alliance, Inc. (together, "Ascension"), and John Does 1-10 (collectively, "Defendants"). Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 ("FLSA"), seeking unpaid overtime compensation, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, against Defendants for their unlawful actions. The following allegations are based on

personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## INTRODUCTION

1.    Ascension is a leading faith-based, not-for-profit health system that provides a variety of healthcare services to patients throughout the United States. As a centralized enterprise, Ascension operates more than 2,600 facilities, including 142 hospitals across 19 states and the District of Columbia. The breadth and scope of Ascension's network makes it one of the largest healthcare providers in the country.

2.    Sacred Heart is an Ascension subsidiary that operates a regional healthcare network in northern Florida.

3.    Defendants employ thousands of non-exempt healthcare workers to provide care to patients across their hospital and outpatient satellite locations. During the COVID-19 pandemic, these frontline workers have risked their lives to continue providing excellent patient care.

4.    This case is about Defendants' knowing and willful failure to pay their hourly employees—frontline healthcare workers who continue to face heightened risks as we enter the third year of the COVID-19 pandemic—for all hours worked, including overtime, as required by the FLSA.

## JURISDICTION AND VENUE

5.    Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. §

216(b) and 28 U.S.C. § 1331.

6.      Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b)(2) since Defendants do business in this District and are subject to personal jurisdiction in this District, and since a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

## PARTIES

7.      Plaintiff is a Registered Nurse who has worked for Defendants from approximately April 2017 to the present. Plaintiff is a citizen of Florida and resides in Pensacola, Florida. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented to be a plaintiff in this action. *See* Exhibit A.

8.      Defendant Ascension Health, Inc. is a faith-based, not-for-profit corporation that provides healthcare to patients throughout the United States. Its principal offices are located at 4600 Edmundson Rd, St. Louis, Missouri 63134.  It is registered to do business in Florida.

9.      Defendant Ascension Health, Inc.'s registered agent for service of process in Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

10.     Defendant Ascension Health Alliance, Inc. is a Missouri, not-for-profit corporation that provides healthcare to patients throughout the United States. Its principal offices are located at 4600 Edmundson Rd, St. Louis, Missouri 63134.

11.     Defendant Ascension Health Alliance, Inc.'s registered agent for service of process is CSC-Lawyers Incorporating Service Company, 221 Bolivar St., Jefferson City, Missouri 65101.

12.     Defendant Sacred Heart Health System, Inc. is not-for-profit corporation that operates several healthcare facilities in northwestern Florida. Its headquarters are located at 5151 North Ninth Avenue, Pensacola, Florida 32504.

13.     Defendant Sacred Heart Health System, Inc., is a subsidiary of Ascension.

14.     Defendant Sacred Heart Health System, Inc.'s registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

15.     John Does 1 through 10 are other persons or entities associated with Defendants who participated in the violations alleged herein but whose identity is presently unknown.

16.     Defendants are joint employers of Plaintiff and the FLSA Collectives as defined below for purposes of the FLSA.

17.     At all times relevant to this action, Defendants employed individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as defined by the FLSA, 29 U.S.C. §§ 206-

207.

18.      Defendants' annual gross volume of business exceeds $500,000.

## **COLLECTIVE DEFINITIONS**

19.      Plaintiff brings Count I of this lawsuit as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and other similarly situated individuals, consisting of:

> All current and former non-exempt hourly employees jointly employed by Sacred Heart Health System, Inc., Ascension Health, Inc., and Ascension Health Alliance, Inc., in the United States who worked more than forty hours in any workweek during the applicable limitations period and who were not paid overtime at a rate of one-and-one-half times their regular hourly rate for all hours worked over forty (the "FLSA Overtime Collective").

20.      Plaintiff brings Count II of this lawsuit as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and other similarly situated individuals, consisting of:

> All current and former non-exempt hourly employees jointly employed by Sacred Heart Health System, Inc., Ascension Health, Inc., and Ascension Health Alliance, Inc., in the United States who have not received timely minimum wage payments, overtime payments, or both from December 2021 to the present ("the FLSA Payday Collective").

21.      The FLSA Overtime Collective and FLSA Payday Collective are referred to together as the "FLSA Collectives," and their members are referred to together as "FLSA Collective Members" of "Collective Members."

22.     Plaintiff reserves the right to redefine the FLSA Collectives prior to notice or class certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers

23.     Ascension holds itself out as a Catholic healthcare provider with an extensive network of hospitals and outpatient care centers.

24.     Ascension relies on its subsidiaries, such as Sacred Heart, to manage hospitals and outpatient care centers within their respective regions such that they align with Ascension's religious ethos and identity.

25.     To present itself as a unified and cohesive enterprise, Ascension exerts substantial operational control over its subsidiaries.

26.     For example, in Ascension's provision of financial data to its investors, Ascension offers solely aggregated information that consolidates data across all subsidiaries and locations. Specifically, on Ascension's "Community and Investor Relationships" webpage, Ascension publishes consolidated financial statements with a corresponding "Management's Discussion" document for each quarter without offering particularized financial statements for its many subsidiaries and locations. In the most-recent "Management's Discussion" document, Ascension presents itself to investors as a centralized network, in fact a "System", that includes "145,000 associates and 40,000 aligned providers, operating more than 2,600 sites

of care—including 141 hospitals and approximately 40 senior living facilities—in 19 states and the District of Columbia, while providing a variety of healthcare-related services including clinical and managed care services, investment management (including venture capital and direct strategic investing), facilities management, risk management, and contracting through Ascension's own group purchasing organization."

27.    Ascension's image as a centralized enterprise is consistent in its provision of general information to the broader public, including prospective patients and their families. For instance, on Ascension's "About" webpage, Ascension restates the same figures regarding the scope of its network and the number of associates that it employs to provide care across 19 states and the District of Columbia.

28.    Notably, for prospective patients seeking care at any of Ascension's hospitals, end users are not redirected to a separate website containing a different URL for each respective hospital or subsidiary.  End users can even utilize the "Find a Location" tool to find a healthcare center within Ascension's network and learn more about each location while staying on Ascension's website, where Ascension's emblem is displayed on every page and Ascension's name in displayed in every URL. For example, the webpage for Ascension's Sacred Heart Pensacola location appears as follows:



29.     Thus, Ascension's web design and presentation is consistent across all locations and subsidiaries.

30.     In Ascension and Sacred Heart's provision of information to their employees regarding their policies and procedures, Defendants similarly maintain streamlined, consistent messaging across all subsidiaries and locations. For example, all Sacred Heart employees receive e-mail accounts under an Ascension domain name, access employee information on "myAscension"—Ascension's proprietary company portal—and utilize Ascension's timekeeping and payroll system, Kronos, for various tasks, including clocking in and clocking out.

31.     Furthermore, all of Defendants' employees are subject to the same standards of conduct rooted in Ascension's mission and values.

32.    With regard to COVID-19 vaccine mandates, Defendants systematically require all employees to be vaccinated against COVID-19 regardless of location.

33.    As discussed below, the memorandum Plaintiff received regarding non-discretionary bonuses was presented in Ascension letterhead:



### Ascension Florida and Gulf Coast Critical Staffing Bonus
**Friday February 19, 2021**

Previous Staffing Payment Programs were very successful in helping to provide adequate staffing stability in our bedded units. We recognize that we still have areas that need adequate staffing stability or/and are experiencing high volumes due to the COVID-19 pandemic. We have decided to continue with a market based staffing bonus through April 10, 2021 to support the frontline caregivers. This bonus should only be used in critical staffing areas and areas with continued high volumes. Please continue to use your typical critical staffing bonus structures that were previously in place outside of this need. My expectation is that from now to April 10th a decreased usage of this bonus structure will have occurred.

Criteria for use:
- Critical staffing needs **AND**
- High volumes above normal surge
- Must be approved by FL&GC Market Leadership and local Hospital President

Eligibility:
- Full-time, part-time, and PRN associates (RNs, RTs/CRTs, PCTs, Unit Assistants, Nursing and Respiratory Supervisors, Managers, and Directors) in identified bedded units.

Bonus - Amount paid for each 12-hour shift worked extra through March 6th (2 shifts per person per pay period to ensure health of our caregivers):
- RN & LPN - $480
- RRT & CRT - $240
- PCT, CNA, Unit Assistant & Pulmonary Specialist - $180

Bonus: Amount paid for each 12-hour shift worked extra through April 10th (2 shifts per person per pay period to ensure health of our caregivers):
- RN & LPN - $240
- RRT & CRT - $120
- PCT, CNA, Unit Assistant & Pulmonary Specialist - $90

Payment:
- The extra shift bonus must be entered by the manager as an adhoc payment in Peoplesoft in the pay period the extra shift is worked in order to ensure any overtime worked is paid correctly.  You should use code CSF for all payments related to this program. View the Quick Reference Guide (QRG) specific to these adhoc payments.

## Defendants Fail To Factor Non-Discretionary Bonuses Into Overtime Compensation

34.    Against the backdrop of a strained healthcare system due in large part to staffing shortages and unprecedented hospitalization levels, healthcare providers have deployed various strategies to address these staffing shortages and hedge against employee burnout while continuing to deliver high-quality patient care.

35.     To this end, beginning in or around December 2020, Defendants implemented, and continue to maintain, various special pay programs (the "Bonuses"), that provide incentive bonuses to non-exempt healthcare employees for working extra shifts during periods of critical staffing shortages due to the ongoing COVID-19 pandemic.

36.     The Bonuses are continuous and iterative: as new variants of the coronavirus drive increases and decreases in hospitalization levels throughout the region, Defendants have responded to the ebbs and flows by revising the Bonuses according to staffing needs.

37.     Plaintiff works as a Registered Nurse at the intensive care unit ("ICU") within Studer Family Children's Hospital at Ascension Sacred Heart in Pensacola, Florida.

38.     Plaintiff performs her work in Pediatrics and is typically scheduled to work three twelve-hour shifts each week.

39.      On December 19, 2020, Plaintiff received an e-mail from Defendants informing her of her eligibility to receive a bonus for picking up an additional twelve-hour shift on the adult side of the hospital, a different unit where she does not typically work.

40.     The e-mail set forth the following eligibility criteria: "RN staff are able to earn an additional $480 if they pick up an additional 12 hour shift between

December 27 and February 20th in the ICU, adult med/surg, or main ED and take a patient assignment. Techs can get an additional $180 and RT an additional $240."

41.     On January 11, 2021, Plaintiff received an e-mail from Defendants informing her of her eligibility to receive two retention bonus payouts if she picked up eight additional shifts on the adult units. This e-mail included a table, reproduced below, setting forth the various bonus payments applicable to each job title:

| Job | Bonus Amount Paid Dec 2020 | Bonus Amount Paid Mar 2021 | Bonus Amount Paid for Each 12-hour Shift Worked Extra | Maximum Bonus Amount Paid |
|---|---|---|---|---|
| RN & LPN (Includes Charge, Lead, and Supervisor jobs where applicable) taking full patient load | $1,000 | $1,000 | $480 | $5,840 |
| RRT & CRT (Includes Charge, Lead, and Supervisor jobs where applicable) taking full patient load | $1,000 | $1,000 | $240 | $3,920 |
| PCT, CNA, Unit Assistant, & Pulmonary Specialist RN Helping Hands | $500 | $500 | $180 | $2,440 |

42.     On February 22, 2021, Plaintiff received an e-mail from Defendants informing her of an expansion to the critical staffing bonus and shedding additional light on Defendants' motives in implementing and continuing the bonus program. As detailed above, this e-mail stated:

> Previous Staffing Payment Programs were very successful in helping to provide adequate staffing stability in our bedded units. We recognize that we still have areas that need adequate staffing stability or/and are experiencing high volumes due to the COVID-19 pandemic. We have decided to continue with a market based staffing bonus

through April 10, 2021 to support the frontline caregivers.

43.     On August 2, 2021, Plaintiff received an e-mail from Defendants informing her of a change in job placement based on increases in hospitalization levels: "Because we are in a critical staffing/surge plan . . . if your home department does not need help, you will first be floated within your service line as needed. If there are no departments that are short staffed within your service area, you may be floated to the adult departments." From this moment onward, Plaintiff picked up extra shifts in Pediatrics, performing the same job duties within the same unit she worked during her regularly scheduled shifts.

44.     In addition to the written communications detailed above, Plaintiff was reminded of the Bonuses at pre-shift briefing meetings, via posters posted in the breakrooms, and on social media groups for her specific unit. Plaintiff made plans to pick up extra shifts and came to expect the ensuing Bonuses.

45.     Pursuant to the FLSA, non-discretionary bonuses are included in the employee's regular rate of pay unless they qualify as excludable under another statutory provision. According to the United States Department of Labor, which is charged with overseeing implementation of the FLSA, "[e]xamples of nondiscretionary bonuses that must be included in the regular rate" of pay for purposes of calculating and paying overtime compensation include:

- Bonuses based on a predetermined formula, such as individual or group production bonuses;

- Bonuses for quality and accuracy of work;

- Bonuses announced to employees to induce them to work more efficiently;

- Attendance bonuses; and

- Safety bonuses (*i.e.*, number of days without safety incidents).

U.S. Dept. of Labor, Wage & Hour Div., *Fact Sheet #56C: Bonuses under the Fair LaborStandards Act (FLSA)*.

46.    The Bonuses are based on a pre-determined formula that is advertised to Defendants' non-exempt employees in advance.

47.    The Bonuses are paid as part of Plaintiff and FLSA Overtime Collective Members' usual wages and treated as compensation along with Plaintiff and FLSA Overtime Collective Members' base salaries.

48.    The Bonuses are intended to incentivize Plaintiff and FLSA Overtime Collective Members to work more hours and provide care to patients during the COVID-19 pandemic. The Bonuses are guaranteed so long as Plaintiff and FLSA Overtime Collective Members pick up and complete extra shifts.

49.    Plaintiff and FLSA Overtime Collective Members know about the Bonuses due to Defendants' extensive advertising, and they expect to receive the Bonuses following completion of extra shifts.

50.    Defendants, however, do not include the Bonuses in their

determination of each employee's regular rate for purposes of calculating overtime pay due for hours worked over forty in any given work week.

51.     Therefore, Defendants do not pay overtime wages on the portion of their employees' earnings attributable to the Bonuses, which properly should be included in the calculation of each employee's regular rate, for purposes of calculating the overtime rate.

52.     Defendants' non-exempt healthcare employees are entitled to have their Bonuses included in the determination of their regular rate for purposes of calculating overtime pay due for hours worked over forty in any given work week.

53.     Defendants' failure to pay overtime wages on the Bonuses portion of their employees' hourly wages violates the FLSA.

## Defendants Fail to Make Timely Minimum-Wage and Overtime Payments

54.     Defendants utilize Kronos's cloud-powered human capital management technology for timekeeping purposes across all locations.

55.     In December 2021, Kronos suffered a ransomware attack, which caused a mass outage across all Kronos customers, including Defendants. This outage prevented Defendants from processing payroll as usual.

56.     In light of this payroll system outage, Defendants responded to the temporary loss by adopting a manual solution, namely copying each employee's previous paystub from earlier in December.

57.     Plaintiff was on leave during the pay period in question, which prevented her from generating any wages for that pay period and consequently left her with a zero-dollar paystub.

58.     Due to Defendants' flawed solution of copying prior paystubs without accounting for actual hours worked, the wages Plaintiff earned from the pay period in which the ransomware attack occurred until the present were not paid and have yet to be paid since they were assumed to be zero.

59.     On information and belief, Defendants have likewise failed to timely compensate the FLSA Payday Collective Members who were on leave during the pay period and whose paystubs Defendants chose to copy in their flawed response to the ransomware attack.

60.     On information and belief, Defendants have likewise failed to timely compensate the FLSA Payday Collective Members who worked reduced or non-overtime schedules during the pay period and whose paystubs Defendants chose to copy in their flawed response to the ransomware attack.

61.     Defendants have denied timely compensation, including without limitation timely minimum-wage and overtime compensation, to Plaintiff and FLSA Payday Collective Members.

62.     Defendants' actions violated and continue to violate the FLSA and its implementing regulations.

## **Defendants Willfully Violated the FLSA**

63.     Defendants' actions in violation of the FLSA were and are made willfully in an effort to avoid liability under the FLSA. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and failures to act.

64.     Specifically, over the course of two months, Plaintiff made numerous attempts to receive proper overtime compensation that included all forms of renumeration, including the Bonuses, in her regular rate of pay for purposes of determining overtime compensation.

65.     Beginning in or around August 2021, Plaintiff complained to her direct supervisor, Steven Jones, about Defendants' failure to accurately compute and pay for overtime compensation that included Bonuses she had earned for picking up additional shifts.

66.     Steven Jones referred Plaintiff to Defendants' payroll department. Upon drawing attention to her paystubs and sharing her complaints with the payroll department, Plaintiff was told that she was wrong. Plaintiff conferred again with Mr. Jones, who then referred her to the payroll manager for her specific unit at Sacred Heart, David Castro. Mr. Castro assented to Plaintiff's complaints and encouraged her to file an official complaint with Defendants' Human Resources department.

67.     Plaintiff filed a complaint with HR through Ascension's online portal.

Plaintiff's complaint was closed on August 30, 2021 by Ascension HR specialist Claire Burkhard.

68.     Plaintiff filed a second complaint with HR. On October 7, 2021, HR specialist Brandy Jones apprised Plaintiff that her Bonuses were not FLSA eligible because they are "non-discretionary" and closed her complaint.

69.     Plaintiff was ultimately unable to resolve her pay issues with Defendants by utilizing the system Defendants created for employees to voice grievances.

70.     Defendants had ample opportunity to pay Plaintiff and the FLSA Overtime Collective all overtime compensation owed. After Plaintiff engaged Defendants in an extended good-faith effort to receive all overtime compensation owed, Defendants had plenty of opportunities to reverse their wrongdoing.

71.     By failing to pay all the overtime compensation owed to Plaintiff and other hourly employees, Defendants acted willfully and in reckless disregard of clearly applicable FLSA provisions.

## COLLECTIVE ACTION ALLEGATIONS

72.     On information and belief, the FLSA Collectives consists of hundreds of similarly situated non-exempt healthcare employees who are paid on an hourly basis.

73.     The vast majority of the members of the FLSA Collectives worked

overtime hours regularly during their employment with Defendants.

74.    The employees in the FLSA Collectives have been the victims of Defendants' common policies and practices that have violated their rights under the FLSA and its implementing regulations by denying them their properly calculated overtime wages on the portion of their wages attributable to the Bonuses.

75.    Defendants' unlawful conduct has been willful and has caused significant damage to Plaintiff and the FLSA Collectives.

76.    The FLSA Collectives would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These employees are known to Defendants and are readily identifiable through Defendants' records. The employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## COUNT I
### Violation of the FLSA
### (On Behalf of Plaintiff and the FLSA Overtime Collective)

77.    The foregoing paragraphs are incorporated as though fully set forth herein.

78.    Defendants are  "employers" within the meaning of 29 U.S.C. §§ 203(c) and 206(a).

79.    Plaintiff and the members of the FLSA Overtime Collective were or are "employees" withinthe meaning of 29 U.S.C. §§ 203(e) and 206(a).

80.     Plaintiff and the FLSA Overtime Collective are not exempt from the requirements of the FLSA.

81.     29 U.S.C. § 207 requires Defendants to pay non-exempt employees one-and-one-half times their regular rate of pay for all hours worked over forty in a work week.

82.     Plaintiff and the FLSA Overtime Collective are entitled to be paid overtime compensation for all hours worked over forty in a work week.

83.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e).

84.     The Supreme Court has held that the term "regular rate" "obviously means the hourly rate actually paid the employee for the normal, non-overtime workweek." *Bay Ridge v. Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948) (quoting *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 40 (1944)).

85.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

86.     The Bonuses that Defendants offer are non-discretionary and should be included in Plaintiff and FLSA Overtime Collective Members' regular rate.

87.     The Bonuses are paid as part of Plaintiff's and the FLSA Overtime Collective Members' usual wages.

88.     The Bonuses are promised to Plaintiff and the FLSA Overtime Collective in advance.

89.     The Bonuses' amounts are predetermined and based on fixed formulas with defined metrics, causing Plaintiff and FLSA Overtime Collective Members to form a reasonable and definite expectation that they receive the Bonuses.

90.     Defendants have denied overtime compensation on the Bonuses portion of the hourly wages of each member of the FLSA Overtime Collective.

91.     Defendants' actions violated and continue to violate the FLSA and its implementing regulations.

92.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

93.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Overtime Collective have suffered damages by being denied overtime wages in accordance with the FLSA and its implementing regulations, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b). Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. § 255(a).

**COUNT II**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the FLSA Payday Collective)**

94.    The foregoing paragraphs are incorporated as though fully set forth herein.

95.    29 U.S.C. § 516 requires Defendants to pay all wages due on the regular payday for the pay period covered.

96.    Plaintiff and the FLSA Payday Collective are entitled to be paid all compensation for all hours worked on the regular payday for the corresponding pay period, including compensation for regular and overtime wages.

97.    As detailed above, following the Kronos ransomware outage, Defendants responded by copying the prior paystubs of Plaintiff and the FLSA Payday Collective Members. This practice has caused Plaintiff and FLSA Payday Collective Members to be systematically deprived of timely pay, as they have worked greater numbers of regular hours, overtime hours, or both, than are reflected in the paystubs which Defendants copied.

98.    Defendants have denied timely paid compensation to Plaintiff and members of the FLSA Payday Collective.

99.    Defendants' actions violated and continue to violate the FLSA and its implementing regulations.

100.    In violating the FLSA, Defendants acted willfully and with reckless

disregard of clearly applicable FLSA provisions.

101.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Payday Collective have suffered damages by being denied all forms of wages in accordance with the FLSA and its implementing regulations, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

A.    An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.    Prompt written notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

C.    Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments, and unpaid wages) and pre-judgment and post-judgment interest to the fullest extent permitted under the law;

D.    Liquidated damages to the fullest extent permitted under the law;

E.    Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

F.      Such other and further relief as this Court deems just
        and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted this 2nd day of March, 2022

**VARNELL & WARWICK P.A.**

By: */s/ Janet R. Varnell*
Janet Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL 33602
Tel: (352) 753-8600
Fax: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
kstroly@vandwlaw.com

Shanon J. Carson*
Camille Fundora Rodriguez*
Alexandra K. Piazza
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
crodriguez@bm.net
apiazza@bm.net

*Counsel for Plaintiff and the FLSA
Collectives*

**pro hac vice* application forthcoming