## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

|  |  |
|---|---|
| CHELSEA E. ANSTEAD and KERCHAI LeFLOR, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>ASCENSION HEALTH; ASCENSION HEALTH ALLIANCE, ASCENSIONCONNECT, LLC, and SACRED HEART HEALTH SYSTEM, INC.<br><br>   Defendants. | **First Amended Class and Collective Action Complaint**<br><br>**Jury Trial Demanded**<br><br>**No. 3:22-CV-2553-MCR-HTC** |

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Chelsea E. Anstead and Kerchai LeFlor ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this First Amended Class and Collective Action Complaint ("FAC" or "Complaint") for unpaid overtime compensation against Defendants Ascension Health, Ascension Health Alliance, AscensionConnect, LLC, and Plaintiff Anstead further brings her claims against Defendant Sacred Heart Health System, Inc. ("Sacred Heart"). All Defendants are referred to collectively herein as "Ascension" or "Defendants." Plaintiffs bring this lawsuit as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201,

*et seq.* (the "FLSA") and as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3), for unpaid overtime compensation, liquidated damages, prejudgment and post-judgment interest, and attorneys' fees and costs, against Defendants for their unlawful actions. This FAC is filed with Defendants' consent pursuant to FED. R. CIV. P. 15(a)(2), and it relates back to the date of the original pleading pursuant to FED. R. CIV. P. 15(c). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## INTRODUCTION

1.     Ascension is a large health system that provides healthcare services to patients throughout the United States. Ascension is a centralized enterprise that operates 142 hospitals in 19 states and the District of Columbia.

2.     Sacred Heart is an Ascension hospital that operates a regional healthcare network in northern Florida.

3.     Ascension employs thousands of non-exempt healthcare workers to provide care to patients across their hospital locations. During the COVID-19 pandemic, these frontline workers risked their lives to continue providing excellent patient care.

4.     This case is about Defendants' knowing and willful failure to pay their hourly, non-exempt employees—frontline healthcare workers who continue to face heightened risks as we enter the third year of the COVID-19 pandemic—for all hours

2

worked, including overtime, as required by the FLSA and state laws.

## JURISDICTION AND VENUE

5.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. §
216(b) and 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over
Plaintiffs' state law claims because those claims derive from a common nucleus of
operative facts.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) since
Defendants do business in this District and are subject to personal jurisdiction in this
District, and since a substantial part of the events giving rise to Plaintiffs' claims
occurred within this District.

## PARTIES

8.      Plaintiff Chelsea E. Anstead is a Registered Nurse who has worked
for Defendants from approximately April 2017 to the present. Plaintiff is a citizen
of Florida and resides in Pensacola, Florida. Under 29 U.S.C. § 216(b), Plaintiff
consented to be a plaintiff in this action. ECF No. 1.

9.      Plaintiff Kerchai LeFlor has worked for Ascension Health Alliance
from approximately December 2021 to the present. Plaintiff is a resident and citizen
of Michigan, who worked for Ascension in Michigan.

10.     Defendant Ascension Health is a not-for-profit corporation that

provides healthcare to patients in 19 states plus the District of Columbia. Its principal offices are located at 4600 Edmundson Rd, St. Louis, Missouri 63134. It is registered to do business in Florida and its registered agent for service of process in Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

11.     Defendant Ascension Health Alliance is a Missouri, not-for-profit corporation that provides healthcare to patients in 19 states plus the District of Columbia. Its principal offices are located at 4600 Edmundson Rd, St. Louis, Missouri 63134, and its registered agent for service of process is CSC-Lawyers Incorporating Service Company, 221 Bolivar St., Jefferson City, Missouri 65101.

12.     Defendant AscensionConnect, LLC is a subsidiary of Ascension Health that provides telehealth services.

13.     Defendant Sacred Heart Health System, Inc. is a not-for-profit corporation that operates several healthcare facilities in northwestern Florida. Its headquarters are located at 5151 North Ninth Avenue, Pensacola, Florida 32504. Defendant Sacred Heart Health System, Inc., is a subsidiary of Ascension and its registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

14.     Defendants are a centralized organization and joint employers of Plaintiffs for purposes of the FLSA.

15.     At all times relevant to this action, Defendants employed individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person as defined by the FLSA, 29 U.S.C. §§ 206-207.

16.     Defendants' annual gross volume of business exceeds $500,000.

## CLASS DEFINITIONS

17.     Plaintiff Anstead brings Count I of this lawsuit as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and the following similarly situated individuals:

> All current and former non-exempt employees of Defendants who worked more than forty hours in any workweek between March 2, 2019 and June 22, 2022 and who were not paid overtime at a rate of one-and-one-half times their regular hourly rate for all hours worked over forty, including taking into account any non-discretionary critical staffing bonuses (the "Regular Rate Collective").

18.     Plaintiffs bring Count II of this lawsuit as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and the following similarly situated individuals:

> All current and former non-exempt hourly employees of Defendants who were underpaid during the period of the Kronos ransomware attack (the "Kronos Collective").

19.     Plaintiff Anstead brings Count III of this lawsuit for unjust enrichment

as a multi-state class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of herself and the following class:

> All current and former non-exempt employees of Defendants who worked more than forty hours in any workweek during the applicable limitations periods and who were not paid overtime at a rate of one-and-one-half times their regular hourly rate for all hours worked over forty, including taking into account any non-discretionary critical staffing bonuses (the "Regular Rate Class").

20.    Plaintiffs bring Count III of this lawsuit for unjust enrichment as a multi-state class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of themselves and the following class:

> All current and former non-exempt hourly employees of Defendants who were underpaid during the period of the Kronos ransomware attack (the "Kronos Class").

21.    The Regular Rate Collective, Kronos Collective, Regular Rate Class, and Kronos Class are referred to collectively herein as the "Classes" and their members are referred to collectively as the "Class Members."

22.    Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers

23.    Ascension is a healthcare provider with an extensive network of hospitals and outpatient care centers.

24.     Ascension relies on its subsidiaries, such as Sacred Heart, Ascension Health, Ascension Health Alliance, and AscensionConnect, LLC, among others, to manage its hospitals and outpatient care centers within their respective regions such that they align with Ascension's ethos and identity.

25.     To present itself as a unified and cohesive enterprise, Ascension exerts substantial operational control over its subsidiaries, including, without limitation, with respect to its human resources, compensation systems, payroll, and related policies.

26.     For example, in Ascension's provision of financial data to its investors, Ascension offers solely aggregated information that consolidates data across its subsidiaries and locations. Specifically, on Ascension's "Community and Investor Relationships" webpage, Ascension publishes consolidated financial statements with a corresponding "Management's Discussion" document for each quarter without offering particularized financial statements for its subsidiaries and locations.

27.     In the most recent "Management's Discussion" document, Ascension presents itself to investors as a centralized network, in fact a "System", that includes "145,000 associates and 40,000 aligned providers, operating more than 2,600 sites of care—including 141 hospitals and approximately 40 senior living facilities—in 19 states and the District of Columbia, while providing a variety of healthcare-related services including clinical and managed care services, investment

management (including venture capital and direct strategic investing), facilities management, risk management, and contracting through Ascension's own group purchasing organization."

28.     Ascension's image as a centralized enterprise is consistent in its provision of general information to the public, including prospective patients and their families. For instance, on Ascension's "About" webpage, Ascension restates the same figures regarding the scope of its network and the number of associates that it employs to provide care across 19 states and the District of Columbia.

29.     Notably, for prospective patients seeking care at any of Ascension's hospitals, patients are not redirected to a separate website containing a different URL for each respective hospital or subsidiary. Patients can even utilize the "Find a Location" tool to find a healthcare center within Ascension's network and learn more about each location while staying on Ascension's website, where Ascension's emblem is displayed on every page and Ascension's name in displayed in every URL. For example, the webpage for Ascension's Sacred Heart Pensacola location appears as follows:



30.     Thus, Ascension's web design and presentation is consistent across all locations and subsidiaries.

31.     In Ascension's provision of information to employees regarding policies and procedures, Defendants similarly maintain streamlined, consistent messaging across all subsidiaries and locations. For example, all Sacred Heart employees receive email accounts under an Ascension domain name, access employee information on "myAscension"—Ascension's proprietary company portal—and utilize Ascension's timekeeping and payroll system, Kronos, for various tasks, including clocking in and clocking out.

32.     All of Defendants' employees are subject to the same standards of conduct rooted in Ascension's mission and values.

33.     With respect to COVID-19 vaccine mandates, Defendants require all employees to be vaccinated against COVID-19 regardless of location.

34.     As discussed below, the memorandum that Anstead received regarding non-discretionary bonuses was presented in Ascension letterhead:



**Ascension Florida and Gulf Coast Critical Staffing Bonus**
**Friday February 19, 2021**

Previous Staffing Payment Programs were very successful in helping to provide adequate staffing stability in our bedded units. We recognize that we still have areas that need adequate staffing stability or/and are experiencing high volumes due to the COVID-19 pandemic. We have decided to continue with a market based staffing bonus through April 10, 2021 to support the frontline caregivers. This bonus should only be used in critical staffing areas and areas with continued high volumes. Please continue to use your typical critical staffing bonus structures that were previously in place outside of this need. My expectation is that from now to April 10th a decreased usage of this bonus structure will have occurred.

Criteria for use:
● Critical staffing needs **AND**
● High volumes above normal surge
● Must be approved by FL&GC Market Leadership and local Hospital President

Eligibility:
● Full-time, part-time, and PRN associates (RNs, RTs/CRTs, PCTs, Unit Assistants, Nursing and Respiratory Supervisors, Managers, and Directors) in identified bedded units.

Bonus - Amount paid for each 12-hour shift worked extra through March 6th (2 shifts per person per pay period to ensure health of our caregivers):
● RN & LPN - $480
● RRT & CRT - $240
● PCT, CNA, Unit Assistant & Pulmonary Specialist - $180

Bonus: Amount paid for each 12-hour shift worked extra through April 10th (2 shifts per person per pay period to ensure health of our caregivers):
● RN & LPN - $240
● RRT & CRT - $120
● PCT, CNA, Unit Assistant & Pulmonary Specialist - $90

Payment:
● The extra shift bonus must be entered by the manager as an adhoc payment in Peoplesoft in the pay period the extra shift is worked in order to ensure any overtime worked is paid correctly.  You should use code CSF for all payments related to this program. View the Quick Reference Guide (QRG) specific to these adhoc payments.

## Defendants Failed To Factor Non-Discretionary Bonuses Into Overtime Compensation

35.     Against the backdrop of a strained healthcare system due to staffing shortages combined with unprecedented hospitalization levels in the wake of the pandemic, healthcare providers have deployed various strategies to address the staffing shortages and hedge against employee burnout while continuing to deliver high-quality patient care.

36.     To this end, beginning in or around December 2020, Defendants implemented, and continue to maintain, various special pay programs (the "Bonuses"), that provide incentive bonuses to non-exempt healthcare employees for working extra shifts during periods of critical staffing shortages due to the pandemic.

37.     The Bonuses are continuous and iterative. As new variants of the coronavirus drive increases and decreases in hospitalization levels, Defendants have responded to the ebbs and flows by revising the Bonuses according to staffing needs.

38.     Plaintiff Anstead works as a Registered Nurse at the intensive care unit ("ICU") within Studer Family Children's Hospital at Ascension Sacred Heart in Pensacola, Florida.

39.     Anstead performs her work in Pediatrics and is typically scheduled to work three twelve-hour shifts each week.

40.     On December 19, 2020, Anstead received an email from Defendants informing her of her eligibility to receive a bonus for picking up an additional twelve-hour shift on the adult side of the hospital, a different unit where she does not typically work.

41.     The email set forth the following eligibility criteria: "RN staff are able to earn an additional $480 if they pick up an additional 12 hour shift between December 27 and February 20th in the ICU, adult med/surg, or main ED and take a patient assignment. Techs can get an additional $180 and RT an additional $240."

42.     On January 11, 2021, Anstead received an email from Defendants informing her of her eligibility to receive two retention bonus payouts if she picked up eight additional shifts on the adult units. This email included a table, reproduced below, setting forth the various bonus payments applicable to each job title:

| Job | Bonus Amount Paid Dec 2020 | Bonus Amount Paid Mar 2021 | Bonus Amount Paid for Each 12-hour Shift Worked Extra | Maximum Bonus Amount Paid |
|---|---|---|---|---|
| RN & LPN (Includes Charge, Lead, and Supervisor jobs where applicable) taking full patient load | $1,000 | $1,000 | $480 | $5,840 |
| RRT & CRT (Includes Charge, Lead, and Supervisor jobs where applicable) taking full patient load | $1,000 | $1,000 | $240 | $3,920 |
| PCT, CNA, Unit Assistant, & Pulmonary Specialist<br><br>RN Helping Hands | $500 | $500 | $180 | $2,440 |

43.     On February 22, 2021, Anstead received an email from Defendants informing her of an expansion to the critical staffing bonus and shedding additional light on Defendants' motives in implementing and continuing the bonus program. As detailed above, this email stated:

> Previous Staffing Payment Programs were very successful in helping to provide adequate staffing stability in our bedded units. We recognize that we still have areas that need adequate staffing stability or/and are experiencing high volumes due to the COVID-19 pandemic. We have decided to continue with a market based staffing bonus through April 10, 2021 to support the frontline caregivers.

44.     On August 2, 2021, Anstead received an email from Defendants informing her of a change in job placement based on increases in hospitalization levels: "Because we are in a critical staffing/surge plan . . . if your home department does not need help, you will first be floated within your service line as needed. If there are no departments that are short staffed within your service area, you may be floated to the adult departments." From this moment onward, Anstead picked up extra shifts in Pediatrics, performing the same job duties within the same unit she worked during her regularly scheduled shifts.

45.     In addition to the written communications detailed above, Anstead was reminded of the Bonuses at pre-shift briefing meetings, via posters posted in the breakrooms, and on social media groups for her specific unit. Anstead made plans to pick up extra shifts and came to expect the ensuing Bonuses.

46.     Pursuant to the FLSA, non-discretionary bonuses are included in the employee's regular rate of pay unless they qualify as excludable under another statutory provision. According to the U.S. Department of Labor, which is charged with overseeing implementation of the FLSA, "[e]xamples of nondiscretionary

bonuses that must be included in the regular rate" of pay for purposes of calculating

and paying overtime compensation include:

- Bonuses based on a predetermined formula, such as individual or group production bonuses;

- Bonuses for quality and accuracy of work;

- Bonuses announced to employees to induce them to work more efficiently;

- Attendance bonuses; and

- Safety bonuses (*i.e.*, number of days without safety incidents).

U.S. Dept. of Labor, Wage & Hour Div., *Fact Sheet #56C: Bonuses under the Fair LaborStandards Act (FLSA)*.

47.     The Bonuses are based on a pre-determined formula that is advertised to Defendants' non-exempt employees in advance.

48.     The Bonuses are paid as part of Plaintiff Anstead's and the Regular Rate Collective Members' usual wages and treated as compensation along with Anstead and Regular Rate Collective Members' base salaries.

49.     The Bonuses are intended to incentivize Anstead and Regular Rate Collective Members to work more hours and provide care to patients during the COVID-19 pandemic. The Bonuses are guaranteed so long as Anstead and Regular Rate Collective Members pick up and complete extra shifts.

50.     Anstead and Regular Rate Collective Members knew about the

Bonuses due to Defendants' extensive advertising and expected to receive the Bonuses following completion of the extra shifts.

51.     Defendants, however, did not include the Bonuses in their determination of each employee's regular rate for purposes of calculating overtime pay due for hours worked over forty in any given work week.

52.     Therefore, Defendants did not pay overtime wages on the portion of their employees' earnings attributable to the Bonuses, which properly should be included in the calculation of each employee's regular rate, for purposes of calculating the overtime rate.

53.     Defendants' non-exempt healthcare employees who qualified for such Bonuses were entitled to have their Bonuses included in the determination of their regular rate for purposes of calculating overtime pay due for hours worked over forty in any given work week.

54.     Defendants' failure to pay the proper overtime wages on the portion of their employees' hourly wages attributable to the Bonuses violated the FLSA.

**Defendants Failed to Make Timely Minimum Wage and Overtime Payments**

55.     Defendants utilize Kronos's cloud-powered human capital management technology for timekeeping purposes across all locations.

56.     In December 2021, Kronos suffered a ransomware attack that caused a mass outage across all Kronos customers, including Defendants. This outage

prevented Defendants from processing payroll as usual.

57.     In light of the payroll system outage, Defendants responded to the temporary loss of their data by adopting a manual solution, namely, by copying each employee's previous paystub from earlier in December. This resulted in many non-exempt employees being underpaid or overpaid during the three (3) pay periods covered by the ransomware attack.

58.     Plaintiff Anstead, for example, was on leave during the previous pay period so she had not generated wages for that pay period and left her with a zero-dollar paystub.

59.     Consequently, due to Defendants' makeshift but flawed solution of copying prior paystubs without accounting for actual hours worked, the wages that Plaintiffs earned from the three (3) pay periods in which the ransomware attack occurred were not paid timely.

60.     Defendants likewise failed to timely and properly compensate Plaintiff LeFlor and the other similarly situated Kronos Collective Members whose pay in the prior pay period was less than the pay that they should have received in the pay period in which the ransomware attack occurred.

61.     Defendants allege that they performed a reconciliation that was completed in the pay period immediately following the pay periods in which the ransomware attack occurred in order to properly pay all of the non-exempt

employees who were underpaid, but did not pay as part of the reconciliation any liquidated damages or penalties for the errors in the prior pay periods in which the ransomware attack occurred.

62.    Defendants' acts as described above denied timely minimum wage and overtime compensation to Plaintiffs and the Kronos Collective Members in violation of the FLSA and its implementing regulations.

## Defendants Willfully Violated the FLSA

63.    Defendants' actions in violation of the FLSA as set forth herein were made willfully to avoid liability under the FLSA. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and failures to act.

64.    Specifically, over the course of two months, Plaintiff Anstead made numerous attempts to receive proper overtime compensation that included all forms of renumeration, including the calculation of the Bonuses in her regular rate of pay for purposes of determining her overtime compensation.

65.    Beginning in or around August 2021, Anstead complained to her direct supervisor, Steven Jones, about Defendants' failure to accurately compute and pay for overtime compensation that included the Bonuses she had earned for picking up additional shifts.

66.    Mr. Jones referred Plaintiff Anstead to Defendants' payroll department. Upon drawing attention to her paystubs and sharing her complaints with

the payroll department, Defendants informed Anstead that she was wrong. Anstead conferred again with Mr. Jones, who then referred her to a payroll manager, David Castro, who encouraged Anstead to file an official complaint with Defendants' Anstead Resources Department.

67.     Anstead filed a complaint with HR through Ascension's online portal. Anstead's complaint was closed on August 30, 2021 by Ascension HR specialist Claire Burkhard.

68.     Anstead then filed a second complaint with HR. On October 7, 2021, HR specialist Brandy Jones incorrectly apprised Anstead that her Bonuses were not FLSA eligible because they are "non-discretionary" and closed her complaint.

69.     Anstead was ultimately unable to resolve her pay issues with Defendants by utilizing the system that Defendants created for employees to voice grievances.

70.     Defendants had ample opportunity to pay Anstead and the Regular Rate Collective all overtime compensation owed. After Anstead engaged Defendants in an extended effort in good faith by Anstead to receive all overtime compensation owed, Defendants had plenty of opportunities to reverse their wrongdoing, but did not do so.

71.     By failing to pay all the overtime compensation owed to Anstead and other non-exempt employees as detailed above, Defendants acted willfully and in

reckless disregard of clearly applicable FLSA provisions.

## **COLLECTIVE ACTION ALLEGATIONS**

72.     The Regular Rate Collective and Kronos Collective each consist of thousands of similarly situated non-exempt employees.

73.     The Regular Rate Collective Members and Kronos Collective Members have been the victims of Defendants' common and uniform policies and practices that have violated their rights under the FLSA and its implementing regulations by denying them their properly calculated overtime wages on the portion of their wages attributable to the Bonuses.

74.     Defendants' unlawful conduct has been willful and has caused significant damage to Plaintiffs and the Regular Rate Collective and Kronos Collective.

75.     The Regular Rate Collective and Kronos Collective would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These employees are known to Defendants and are readily identifiable through Defendants' records. The employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## **CLASS ACTION ALLEGATIONS**

76.     Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of Plaintiff Anstead and the Regular Rate Class, and on

behalf of Plaintiffs Anstead and LeFlor and the Kronos Class.

77.     The members of the Regular Rate Class and Kronos Class are each so numerous that joinder of all members is impracticable, as there are thousands of members of each Class.

78.     Plaintiffs will fairly and adequately represent and protect the interests of the Regular Rate Class and Kronos Class because there is no conflict between the claims of Plaintiffs and those of the Classes, and Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

79.     There are questions of law and fact common to the proposed Regular Rate Class and Kronos Class which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants have been unjustly enriched through their policy or practice of not paying non-exempt employees proper overtime compensation as alleged herein.

80.     Plaintiffs' claims are typical of the claims of the Regular Rate Class and Kronos Class in the following ways, without limitation: (a) Anstead is a member of the Regular Rate Class and Kronos Class, and LeFlor is a member of the Kronos Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Regular Rate Class and Kronos Class,

as set forth above; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Class members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Class members.

81.     Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Regular Rate Class and Kronos Class predominate over any questions affecting only individual Class members.

82.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Regular Rate Class Members and Kronos Class Members are readily identifiable from Defendants' employment records. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

83.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

84.     Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Classes. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Anstead and the Regular Rate Collective)

85.     The foregoing paragraphs are incorporated as though fully set forth herein.

86.     Defendants are "employers" within the meaning of 29 U.S.C. §§ 203(c) and 206(a).

87.     Plaintiff Anstead and the members of the Regular Rate Collective were or are "employees" within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

88.     Anstead and the Regular Rate Collective are not exempt from the requirements of the FLSA.

89.     29 U.S.C. § 207 requires Defendants to pay non-exempt employees one-and-one-half times their regular rate of pay for all hours worked over forty in a work week.

90.     Anstead and the Regular Rate Collective are entitled to be paid overtime compensation for all hours worked over forty in a work week.

91.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e).

92.     The Supreme Court has held that the term "regular rate" "obviously means the hourly rate actually paid the employee for the normal, non-overtime workweek." *Bay Ridge v. Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948) (quoting *Walling v. Helmerich & Payne, Inc.,*323 U.S. 37, 40 (1944)).

93.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

94.     The Bonuses that Defendants offered were non-discretionary and should be included in Plaintiff Anstead and the Regular Rate Collective Members' regular rate.

95.     The Bonuses were paid as part of Anstead's and the Regular Rate Collective Members' usual wages.

96.     The Bonuses were promised to Anstead and the Regular Rate Collective in advance.

97.     The Bonuses' amounts were predetermined and based on fixed formulas with defined metrics, causing Anstead and the Regular Rate Collective

Members to form a reasonable and definite expectation that they receive the Bonuses, and they did receive the Bonuses.

98.     Defendants denied overtime compensation on the Bonuses portion of the hourly wages of each Regular Rate Collective Member.

99.     Defendants' actions violated and continue to violate the FLSA and its implementing regulations.

100.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

101.    As a result of Defendants' willful violations of the FLSA, Anstead and the Regular Rate Collective have suffered damages by being denied overtime wages in accordance with the FLSA and its implementing regulations, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b). Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. § 255(a).

**COUNT II**
**Violation of the FLSA**
**(On Behalf of Plaintiffs and the Kronos Collective)**

102.    The foregoing paragraphs are incorporated as though fully set forth herein.

103.   29 U.S.C. § 516 requires Defendants to pay all wages due on the regular payday for the pay period covered.

104.   Plaintiffs and the Kronos Collective are entitled to be paid all compensation for all hours worked on the regular payday for the corresponding pay period, including compensation for regular and overtime wages.

105.   As detailed above, following the Kronos ransomware attack, Defendants responded by copying the prior paystubs of Plaintiffs and the Kronos Collective Members. This practice caused Plaintiffs and Kronos Collective Members to be deprived of timely pay, as they worked greater numbers of regular hours, overtime hours, or both, than were reflected in the paystubs which Defendants copied.

106.   Defendants denied timely paid compensation to Plaintiffs and members of the Kronos Collective.

107.   Defendants' actions violated and continue to violate the FLSA and its implementing regulations.

108.   In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

109.   As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Kronos Collective suffered damages by being denied all forms of wages in accordance with the FLSA and its implementing regulations, in amounts to be

determined at trial, and are entitled to recover such amounts, as well as liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT III
### Unjust Enrichment Under State Law
### (On Behalf of Plaintiffs and the Regular Rate Class and Kronos Class)

110.     All previous paragraphs are incorporated as though fully set forth herein.

111.     This count is brought against Defendants pursuant to the common law doctrine of unjust enrichment in each state in which Plaintiffs and the Regular Rate Class and Kronos Class Members worked, which includes Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Washington, D.C., Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, New Jersey, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

112.     Defendants have received and benefited from the uncompensated labors of Plaintiffs and the Regular Rate Class and Kronos Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

113.    At all relevant times hereto, Defendants devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiffs and the Classes without paying overtime compensation for all hours worked.

114.    Contrary to all good faith and fair dealing, Defendants induced Plaintiffs and the Regular Rate Class and Kronos Class to perform work while failing to pay proper overtime compensation for all hours worked as required by law.

115.    By reason of having secured the work and efforts of Plaintiffs and the Classes without paying overtime compensation as required by law, Defendants enjoyed reduced overhead with respect to their labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiffs and the Classes. Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

116.    Accordingly, Plaintiffs and the Classes are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

A.    An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. Prompt written notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Regular Rate Collective Members and Kronos Collective Members;

C. An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of the Regular Rate Class and Kronos Class;

D. Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments, and unpaid wages) and prejudgment and post-judgment interest to the fullest extent permitted under the law;

E. Liquidated damages to the fullest extent permitted under the law;

F. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

G. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury for all issues of fact.

Dated: July 25, 2022                              Respectfully submitted,

*/s/ Camille Fundora Rodriguez*
Shanon J. Carson
Camille Fundora Rodriguez
Alexandra K. Piazza
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
crodriguez@bm.net
apiazza@bm.net
Janet Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573

**VARNELL & WARWICK P.A.**
1101 E. Cumberland Ave., Suite
201H, #105
Tampa, FL 33602
Tel: (352) 753-8600
Fax: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com

Andrew R. Frisch
FL Bar # 027777
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
Email: AFrisch@forthepeople.com

C. Ryan Morgan, Esq.
FL Bar No. 0015527
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 16th Floor
PO Box 4979
Orlando, FL 32802-4979
Telephone:(407) 420-1414
Facsimile: (407) 867-4791
Email: rmorgan@forthepeople.com

Matthew S. Parmet
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone       713 999 5228
Email: matt@parmet.law

*Counsel for Plaintiffs and the proposed*
*Regular Rate Collective Members and*
*Kronos Collective Members*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2022, I caused the foregoing to be served on all counsel of record via ECF.

*<u>/s/ Camille Fundora Rodriguez</u>*
Camille Fundora Rodriguez
