# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| **CHELSEA E. ANSTEAD and** | : | |
| **KERCHAI LeFLOR, individually and** | : | **No. 3:22-CV-2553-MCR-HTC** |
| **on behalf of all others similarly** | : | |
| **situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ASCENSION HEALTH;** | : | |
| **ASCENSION HEALTH** | : | |
| **ALLIANCE,** | : | |
| **ASCENSIONCONNECT, LLC, and** | : | |
| **SACRED HEART HEALTH** | : | |
| **SYSTEM, INC.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## SETTLEMENT AGREEMENT

1.     This Settlement Agreement ("Settlement" or "Agreement") is made and entered in the above-captioned Litigation, *Anstead, et al. v. Ascension Health, et al.*, No. 3:22-cv-02553-MCR-HTC (N.D. Fla.) (the "Litigation"), by Plaintiffs Chelsea E. Anstead and Kerchai LeFlor ("Plaintiffs"), on behalf of themselves and the Settlement Collective and Class defined below, and Defendants Ascension Health, Ascension Health Alliance, AscensionConnect, LLC, and Sacred Heart Health System, Inc. (collectively, "Ascension" or "Defendants").

## BACKGROUND

2.     On March 2, 2022, Plaintiff Chelsea E. Anstead filed the initial complaint in the Litigation alleging claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA), arising from (a) Defendants' exclusion of non-discretionary bonuses from the regular rate in calculating overtime compensation for non-exempt employees, and (b) a Kronos ransomware attack that took place between

November 2021 and January 2022 and affected the payment of wages and overtime compensation for non-exempt employees during three pay periods (hereinafter, the "Kronos Incident"). (ECF No. 1.)

3.      Following the filing of Plaintiff Anstead's initial complaint, the Parties met and conferred and agreed to a stay of the Litigation in order to engage in an alternative dispute resolution ("ADR") process, including discovery and mediation, to attempt to resolve the claims alleged in the Litigation. On March 28, 2022, the Parties informed the Court of these efforts by submitting a stipulation to stay the case for purposes of facilitating the ADR process. (ECF No. 9.)

4.      The Parties' ADR process included substantial discovery, including, for example, Defendants' production to Lead Class Counsel (defined below) of certain payroll data as well as Defendants' analysis of unpaid overtime compensation for the non-exempt employees at issue.

5.      Lead Class Counsel further conducted their own analysis of Defendants' payroll data that was produced as part of the ADR process and conferred with Defendants concerning these issues prior to engaging in mediation.

6.      On June 13, 2022, following the pre-mediation ADR discovery period described above, the Parties engaged in in-person mediation in Atlanta, Georgia overseen by an experienced wage and hour mediator, A. Lee Parks, Esq. During the mediation, the Parties engaged in further disclosures and negotiations concerning the relevant facts and law, and ultimately, as a result of the arm's-length mediation process and with the assistance of the mediator, the Parties concluded the mediation by agreeing on certain key settlement terms, subject, however, to further discovery that was demanded by Lead Class Counsel in order to assess the proposed terms of the Settlement and ensure the Settlement was fair and reasonable for the Settlement Collective and Class Members.

7.      The following day, on June 14, 2022, Plaintiff demanded and subsequently negotiated and obtained further discovery from Defendants including, for example:

            i.      Documents further reflecting and evidencing the critical staffing bonuses paid by Defendants to Regular Rate Collective and Class Members including, without limitation, policies, memos, and employee communications;

            ii.     Data and a random sample of payroll records in weeks where critical staffing bonuses were provided to Regular Rate Collective and Class Members;

iii.    Documents regarding the November 2021 to January 2022 Kronos ransomware attack and subsequent reconciliation by Defendants with respect to non-exempt employees who had been underpaid, including all correspondence between Defendants and their non-exempt employees who were affected by the Kronos Incident;

iv.    Data and documents demonstrating that on January 21, 2022, Defendants implemented a reconciliation concerning the Kronos Incident that compensated Defendants' non-exempt employees for underpayments of wages and overtime compensation during the Kronos Incident;

v.    Data evidencing the number of Regular Rate Collective and Class Members, and the number of Kronos Collective and Class Members, and their geographic location; and

vi.    Other relevant human resources policies, overtime policies, and bonus policies.

8.    On May 4, 2022, Plaintiff Kerchai LeFlor filed a related collective and class action lawsuit alleging claims under the FLSA and state law for unpaid wages and overtime compensation arising out of the Kronos Incident in the Eastern District of Missouri against Defendants Ascension Health and Ascension Health Alliance, captioned *LeFlor v. Ascension Health, et al.*, No. 4:22-cv-00496 (E.D. Mo.). On June 8, 2022, Defendants in the *LeFlor* action filed a Motion to Stay and Transfer *LeFlor* to be consolidated with this first-filed Litigation. Plaintiff LeFlor thereafter voluntarily dismissed her lawsuit in the Eastern District of Missouri, and Plaintiffs together filed a First Amended Class and Collective Action Complaint ("FAC") in this Court on July 25, 2022.

9.    Following their respective review and analysis of the discovery described above, the Parties engaged in further settlement negotiations overseen by the mediator, and ultimately negotiated this Settlement Agreement pursuant to which the Parties agreed to settle the claims asserted in the Litigation according to the terms and conditions set forth herein.

10.    Class Counsel has made a thorough and independent investigation of the facts and law relating to the allegations asserted in the FAC. In agreeing to this Settlement Agreement, Plaintiffs considered: (a) the facts developed during the Parties' discovery process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (c) the desirability of timely consummating this Settlement

according to the terms of this Settlement Agreement. Plaintiffs and Class Counsel have concluded that pursuant to the FLSA, and in light of the risks of continued litigation, the terms of this Settlement Agreement constitute a fair and reasonable resolution of a *bona fide* dispute, and that it is in the best interests of Plaintiffs and the Settlement Collective and Class Members to settle their claims against Defendants pursuant to the terms set forth herein.

11.      Defendants deny any liability associated with any and all of Plaintiffs' claims alleged in the FAC and assert that Defendants complied at all times with all applicable state and federal laws. With respect to the Kronos Incident claims in particular, Defendants further assert that in good faith, Defendants previously reconciled and paid, in the pay period directly following regaining access to the Kronos timekeeping system, all unpaid wages and overtime compensation that were owed to Defendants' non-exempt employees arising from the Kronos Incident that affected the three (3) pay periods at issue. Therefore, Defendants assert that they have numerous and complete legal and factual defenses against all claims relating to the Kronos Incident, as Defendants' data was stolen and held for ransom by a third party. Defendants assert that they acted in good faith at all times to ensure compliance with their legal obligations arising from the Kronos Incident, including the immediate institution of manual timekeeping processes, and therefore have no liability whatsoever under the FLSA and/or related state wage and hour laws for liquidated damages or penalties. Nonetheless, Defendants have concluded that in consideration of the costs, risks, and burdens of litigation, Defendants are willing to agree to the terms and conditions set forth in this Settlement Agreement.

12.      The Parties desire to settle, compromise, and resolve fully the claims asserted in the FAC and the Litigation, and to seek the Court's review and approval of the Settlement Agreement. Pursuant to the FLSA and relevant state law, the Court's approval of the Settlement is required to effectuate the terms and conditions set forth in this Settlement Agreement, and the Settlement will not become operative until the Court grants approval of it, the Settlement becomes final, and the Effective Date as defined below is reached.

13.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all Parties, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court, that Plaintiffs' and the Settlement Collective and Class Members' claims against Defendants as alleged in the FAC shall be settled, compromised and dismissed, on the merits and with prejudice, in the manner and upon the terms and conditions set forth herein.

## **DEFINITIONS**

14.     The following terms used in this Agreement shall mean the following:

A.      "**Acceptance Period**" means the 180 calendar-day period from the date of the Settlement Check during which a Settlement Collective and Class Member may sign and cash or deposit the Settlement Check before it becomes non-negotiable.

B.      "**Administration Costs**" means all reasonable fees and costs of the Settlement Administrator related to providing notice and administration of the Settlement and performing all duties assigned to the Settlement Administrator as set forth herein. All Administration Costs shall be paid from the Gross Settlement Amount in a total amount not to exceed $250,000 (of which $112,500 is attributed to the notice and administration of the Regular Rate Collective and Class, and $137,500 is attributed to the notice and administration of the Kronos Collective and Class).

C.      "**CAFA Notice**" means the notice to be sent by Defendants or by the Settlement Administrator on Defendants' behalf to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) days after the submission of this Agreement to the Court. A copy shall be provided to Lead Class Counsel.

D.      "**Class Counsel**" means Berger Montague PC, Varnell & Warwick, P.A., Parmet PC, and Morgan & Morgan. "**Lead Class Counsel**" means Shanon J. Carson, Camille Fundora Rodriguez, and Alexandra K. Piazza of Berger Montague PC and Janet Varnell of Varnell & Warwick, P.A.

E.      "**Court**" means the United States District Court for the Northern District of Florida.

F.      "**Defendants' Counsel**" means B. Tyler White and Eric R. Magnus of Jackson Lewis P.C.

G.      "**Effective Date**" means the day following the date of the Court's Final Approval Order if there are no objectors, and if there are any objectors, means (i) the day following the expiration of the thirty-day deadline for appealing the entry by the Court of the Final Approval Order, if no appeal is filed; or (ii) if an appeal of the Final Approval Order is filed, the date upon which all appellate courts with jurisdiction affirm such Final Approval Order and Judgment, or deny any such appeal or petition for certiorari, such that no future appeal is possible.

DocuSign Envelope ID: 4A60ABB5-DEE6-4820-A616-2004SE806863

H. "**Eligible Settlement States**" means Alabama, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, New Jersey, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

I. "**Employer Payroll Taxes**" means Defendants' share of any taxes that they are required to pay arising out of the payment of any monies to Settlement Collective and Class Members as part of this Settlement, including FICA, FUTA, and SUTA obligations. Employer Payroll Taxes are not included within the Gross Settlement Amount and will be separately paid by Defendants outside of the Gross Settlement Amount.

J. "**Final Approval Order**" means the Court's Final Approval Order granting final approval of the Settlement and entering judgment. The Parties shall present a proposed Final Approval Order to the Court when Plaintiffs file their motion for final approval of the Settlement.

K. "**Final Approval Hearing**" means the hearing to be held by the Court to consider the final approval of the Settlement following notice of the Settlement to the Settlement Collective and Class Members.

L. "**Gross Settlement Amount**" means the maximum total gross amount of Nineteen Million, Seven Hundred and Forty Thousand Dollars ($19,740,000.00) that Defendants have agreed to pay to resolve and settle the claims asserted in the Litigation (excluding Employer Payroll Taxes which are outside the Gross Settlement Amount). The Gross Settlement Amount consists of: (i) the Regular Rate Settlement Amount of Sixteen Million Dollars ($16,000,000.00) (hereinafter, the "**Regular Rate Settlement Amount**"); and (ii) the Kronos Settlement Amount of Three Million, Seven Hundred and Forty Thousand Dollars ($3,740,000.00) (hereinafter, the "**Kronos Settlement Amount**"). The term "**Regular Rate Net Settlement Amount**" means the Regular Rate Settlement Amount less Class Counsel's attorneys' fees and costs, and Administration Costs, as approved by the Court. The term "**Kronos Net Settlement Amount**" means the Kronos Settlement Amount less Class Counsel's attorneys' fees and costs, and Administration Costs, as approved by the Court.

M. "**Litigation**" or "**Lawsuit**" means *Anstead, et al. v. Ascension Health, et al.*, No. 3:22-cv-02553-MCR-HTC (N.D. Fla.).

N.      "**Notice of Settlement**" means (i) the Regular Rate Notice of Settlement substantially in the form of Exhibit A attached hereto, to be utilized for all Regular Rate Collective and Class Members, and (ii) the Kronos Incident Notice of Settlement substantially in the form of Exhibit B attached hereto, to be utilized for all Kronos Collective and Class Members.

O.      "**Objection and Opt-Out Deadline**" means the date forty-five (45) days after the Notice of Settlement is initially mailed by the Settlement Administrator to the Settlement Collective and Class Members.

P.      "**Parties**" means Plaintiffs and Defendants.

Q.      "**Plaintiffs**" means Chelsea E. Anstead and Kerchai LeFlor.

R.      "**Preliminary Approval Order**" means the Court's Preliminary Approval Order preliminarily approving this Agreement. The Parties' proposed Preliminary Approval Order is attached hereto as Exhibit C.

S.      "**Qualified Settlement Fund**" or "**QSF**" means an account held by the Settlement Administrator to effectuate the terms of the Agreement and the Orders of the Court, to be treated for federal income tax purposes pursuant to Treas. Reg. § 1.46B-1. The Settlement Administrator shall establish the QSF within three (3) business days after the issuance of the Final Approval Order by the Court. The Settlement Administrator shall be responsible for establishing, administering, and otherwise operating the QSF, including preparing and filing federal and state tax returns with applicable government tax authorities, and remitting tax withholdings to the applicable government tax authorities.

T.      "**Releasees**" means Defendants and their past, present, and future parent companies, corporate members, affiliates, and subsidiaries that employed Settlement Collective and Class Members, and their divisions, predecessors, successors, partners, owners, shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Ascension, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was or could have been named as a defendant in the Litigation based upon the facts alleged in the FAC.

U.      "**Settlement Administrator**" means Rust Consulting, Inc., a third-party independent company chosen by the Parties following a request for proposal and bidding process, who will be presented to the Court for its approval in

the Preliminary Approval Order to perform all notice and administration responsibilities assigned to the Settlement Administrator in this Settlement Agreement.

V. "**Settlement Check**" or "**Settlement Payment**" means any check issued to a Settlement Collective Member by the Settlement Administrator.

W. "**Settlement Collective and Class**" and "**Settlement Collective and Class Members**" means:

i. All current and former non-exempt employees employed by any or all of the Defendants in one or more of the Eligible Settlement States during the time period from March 2, 2019 through June 13, 2022, who worked more than forty hours in any workweek and who were not paid overtime at a rate of one-and-one-half times their "regular hourly rate" for all hours worked over forty taking into account any non-discretionary critical staffing bonuses (hereinafter, the "**Regular Rate Collective and Class**" and each a "**Regular Rate Collective and Class Member**"); and

ii. All current and former non-exempt employees employed by any or all of the Defendants in one or more of the Eligible Settlement States at any time during the Kronos ransomware attack between November 2021 and January 2022 who received a reconciliation payment for underpayments during the Kronos ransomware attack (hereinafter, the "**Kronos Collective and Class**" and each a "**Kronos Collective and Class Member**").

iii. Defendants have produced data confirming that there are 47,131 Regular Rate Collective and Class Members and 37,485 Kronos Collective and Class Members who are not Regular Rate Collective and Class Members. The Regular Rate Collective and Class also includes 20,074 individuals that are members of the Kronos Collective and Class.

## STIPULATION TO CERTIFICATION

15. **Stipulation to Certification**. The Parties stipulate and agree for settlement purposes only that the requirements for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b), and class certification pursuant to FED. R. CIV. P. 23(a) and (b)(3) are met with respect to the Regular Rate Collective and Class and the Kronos Collective and Class defined above. Should this Settlement not become final and reach the Effective Date, this stipulation to certification for FLSA collective treatment and Rule 23 class action treatment shall become null and void and have no bearing on and shall not be admissible in

connection with the issue of whether or not FLSA certification or state law class certification would be appropriate in a non-settlement context.

16.    **Payment of Gross Settlement Amount As Fair and Reasonable Resolution of a _Bona Fide_ Dispute**. Defendants have agreed to pay the Gross Settlement Amount, including the Regular Rate Settlement Amount and the Kronos Settlement Amount set forth in Paragraph 14(L) above, to fund its settlement obligations pursuant to this Agreement, and to settle all pending issues in the Litigation between the Parties, and acknowledge and agree that such payment is intended to resolve a _bona fide_ dispute.

## NOTICE AND SETTLEMENT ADMINISTRATION

17.    **Motion for Preliminary Approval**. Following the execution of this Settlement Agreement, Plaintiffs shall promptly file a Motion for Preliminary Approval of Settlement Agreement, requesting that the Court enter the proposed Preliminary Approval Order attached as Exhibit C, that asks the Court to certify the requested classes pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 23(a) and (b)(3) for the sole purpose of settlement; preliminarily approve this Agreement as fair, reasonable, and adequate, and as a fair and reasonable resolution of a _bona fide_ dispute; approve the Notice of Settlement; and find that the proposed method of disseminating the Notice of Settlement meets the requirements of due process and is the best notice practicable under the circumstances; set a date for the filing of Plaintiffs' Motion for Attorneys' Fees and Costs, and Plaintiffs' Motion for Final Approval of Settlement Agreement, and schedule the Final Approval Hearing.

18.    **Notice of Settlement**. The Settlement Administrator shall be responsible for preparing, printing, and distributing the Notice of Settlement, including by mailing and emailing the Regular Rate Notice of Settlement to the Regular Rate Collective and Class Members, and by mailing and emailing the Kronos Incident Notice of Settlement to the Kronos Collective and Class Members (though a combined version of the notice may be sent by the Settlement Administrator to those in both groups with the approval of the Parties in order to save costs).

19.    **Production of Mailing and Contact Information**. Within seven (7) calendar days after issuance of the Court's Preliminary Approval Order, Defendants shall provide to the Settlement Administrator a confidential electronic database in Microsoft Excel format containing, for each Settlement Collective and Class Member, their: (i) name; (ii) last known address; (iii) last known email address (including work email addresses of current employees of Defendants); (iv) last

9

known telephone number; (v) state(s) worked; (vi) an identification number; and (vii) Social Security number (to be used by the Settlement Administrator solely for purposes of preparing and issuing the Notice of Settlement and locating individuals if a Settlement Check is returned as undeliverable, and for tax purposes (hereinafter, the "Settlement Collective and Class List" or "List"). The List shall also include for each Settlement Collective and Class Member all payroll and overtime compensation information in Defendants' possession during the time period from March 2, 2019 through June 13, 2022 for the Regular Rate Collective and Class Members, and during the time period from November 1, 2021 to January 31, 2022 for the Kronos Collective and Class Members. The Settlement Administrator shall maintain the confidentiality of the List and not share it with Class Counsel. Defendants shall separately provide Lead Class Counsel with the List but shall remove the name, addresses, email addresses, telephone numbers, and Social Security number information.

20.     **Best Notice Practicable**. Prior to mailing the Notice of Settlement, the Settlement Administrator will utilize reasonable efforts to identify current addresses of Settlement Collective and Class Members and shall run all addresses provided through the U.S. Post Office's National Change of Address ("NCOA") database. Furthermore, if any mail is returned as undeliverable, the Settlement Administrator will perform a skip trace using proprietary databases to search for any updated address, and will promptly, within three (3) business days of any mail being returned as undeliverable, remail the Notice of Settlement to that person at any updated address that is found by the Settlement Administrator.

21.     **Mailing and Emailing of Notice of Settlement**. Within ten (10) days of receiving the Settlement Collective and Class List, the Settlement Administrator shall mail the Notice of Settlement to the Settlement Collective and Class Members via U.S. First Class Mail, and also email it to all Settlement Collective and Class Members for whom an email address has been provided. The Settlement Administrator shall immediately notify Lead Class Counsel and Defendants' Counsel when the Notice of Settlement has been issued. Any Notice of Settlement returned to the Settlement Administrator with a forwarding address shall be promptly remailed within three (3) business days following receipt of the returned mail. If a Notice of Settlement is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts to search for the correct address using proprietary databases and shall promptly remail the Notice of Settlement within three (3) business days to any newly found addresses.

22. **Objections**. The Notice of Settlement shall provide that all Settlement Collective and Class Members who wish to object to the Settlement must, on or before the Objection and Opt-Out Deadline, mail to the Settlement Administrator a written statement objecting to the Settlement. Such objection shall not be valid unless it includes the information specified in the Notice of Settlement. Specifically, the objection must be signed personally by the objector, and must include the objector's name, address, telephone number, email address, the factual and legal grounds for the objection, and whether the objector intends to appear at the Final Approval Hearing. The Notice of Settlement shall advise that objections shall only be considered if the Settlement Collective Member has not opted out of the Settlement. No Settlement Collective and Class Member shall be heard at the Final Approval Hearing (whether individually or through counsel), unless written notice of the person's intention to appear at the Final Approval Hearing has been mailed to the Settlement Administrator on or before the Objection and Opt-Out Deadline. The postmark date shall be the exclusive means for determining that an objection is timely. Persons who do not submit a timely objection in the manner specified above shall be deemed to have waived any objections to the Settlement's fairness, reasonableness, and adequacy, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. None of the Parties, their counsel, nor any person acting on their behalf, shall seek to solicit or encourage anyone to object to the Settlement, or discourage participation in the Settlement.

23. **Requests for Exclusion**. The Notice of Settlement shall provide that Settlement Collective and Class Members who wish to exclude themselves from the treatment of the Regular Rate Collective and Class or the Kronos Collective and Class as a class action pursuant to FED. R. CIV. P. 23 (*i.e.*, "opt out") must mail to the Settlement Administrator a written statement indicating that they do not wish to participate or be bound by the Settlement. The written request for exclusion must contain the person's full name, address, telephone number, and email address, and must be signed individually by the Settlement Collective and Class Member. No opt-out request may be made on behalf of a group. In order to be considered timely, any request for exclusion must be postmarked by the Objection and Opt-Out Deadline.

24. **Reporting by Settlement Administrator**. On a weekly basis, the Settlement Administrator shall provide Lead Class Counsel and Defendants' Counsel with a detailed written report and accounting of all Settlement-related statistics, including, without limitation, (a) the number of Notices of Settlement mailed; (b) the number of Notices of Settlement returned as undeliverable, and remailed; (c) the number of requests for exclusion received; (d) the number of objections received; and (e) any other pertinent information requested by Lead Class

Counsel and/or Defendants' Counsel. The Settlement Administrator shall immediately email to Lead Class Counsel and Defendants' Counsel any requests for exclusion and/or objections received, including their postmark date. The Settlement Administrator shall prepare declarations at the request of Lead Class Counsel or Defendants' Counsel at any time, including a declaration to be submitted to the Court as an exhibit to Plaintiffs' Motion for Final Approval of Settlement Agreement, setting forth that the Settlement Administrator fulfilled its duties under this Agreement.

25.   **Final Approval Hearing**. Following the notice process set forth above, and two weeks prior to the Final Approval Hearing or at such other time as is ordered by the Court, Plaintiff shall file a Motion for Final Approval of Settlement Agreement, to request the issuance of a Final Approval Order, among other things:

a.   Reaffirming the certification of the Regular Rate Collective and Class and Kronos Collective and Class as an FLSA collective action under 29 U.S.C. § 216(b) and as a class action under FED. R. CIV. P. 23(a) and (b)(3) for purposes of settlement only;

b.   finding that the Settlement Administrator's dissemination of the Notice of Settlement was accomplished as directed and met the requirements of due process;

c.   finally approving the Settlement and its terms as fair, reasonable and adequate and as a fair and reasonable resolution of a *bona fide* dispute;

d.   directing that the Settlement funds be distributed in accordance with the terms of this Settlement Agreement; and

e.   directing that the Litigation be dismissed and judgment entered consistent with the terms set forth herein.

## SETTLEMENT FUND DISTRIBUTIONS

26.   **Funding of Settlement**. Within ten (10) business days after the Court's issuance of the Final Approval Order, Defendants will deposit by wire the Gross Settlement Amount in the Qualified Settlement Fund ("QSF") established by the Settlement Administrator. The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the QSF.

27.   **Settlement Payment Eligibility and Calculations**. The Settlement Administrator, utilizing payroll data that will be provided to the Settlement

Administrator by Defendants, shall be responsible for determining eligibility for and the amount of all Settlement Payments to be paid to Settlement Collective and Class Members, as follows.

    a.    **Settlement Payments to Regular Rate Collective and Class Members**. All Regular Rate Collective and Class Members shall receive a *pro rata* share of the Regular Rate Net Settlement Amount based upon the amount of their unpaid overtime damages as set forth in the payroll and related data to be provided to the Settlement Administrator by Defendants, though all Regular Rate Collective and Class Members shall receive a minimum payment of $40.00. In the event that the Settlement Administrator determines that any of Defendants' calculations of the *pro rata* share of the Regular Rate Net Settlement Amount due to the Regular Rate Collective and Class Members appear to be inaccurate, the Settlement Administrator shall promptly notify the Parties of the discrepancy, and the Parties shall promptly and reasonably cooperate with one another to reconcile any discrepancy.

    b.    **Settlement Payments to Kronos Collective and Class Members**. Defendants produced information in the Litigation evidencing that Defendants previously implemented a reconciliation with respect to underpayments resulting from the Kronos Incident and paid each Kronos Collective and Class Member in the first pay period following the Kronos Incident, one hundred percent (100%) of all unpaid wages and overtime compensation that was owed. Pursuant to this Agreement, all Kronos Collective and Class Members shall receive as additional consideration an equal share of the Kronos Net Settlement Amount, which is expected to be a Settlement Payment of at least approximately $40.00.

28.    **Tax Treatment of Settlement Payments**. Fifty percent of all Settlement Payments issued by the Settlement Administrator to Regular Rate Collective and Class Members will be treated as owed wages and the other fifty percent shall be treated as liquidated damages. The portion allocated to claims for owed wages shall be made net of the employee's share of all applicable employment taxes and shall be reported on an IRS Form W-2. The portion allocated to liquidated damages shall be made without withholdings and shall be reported on an IRS Form 1099. All Settlement Payments issued by the Settlement Administrator to Kronos Collective and Class Members will be treated as liquidated damages and shall be reported on an IRS Form 1099. Defendants shall be responsible for issuing any IRS Form W-2s and Form 1099s.

29.    **Employer Payroll Taxes**. Defendants are responsible for any employer side payroll taxes outside of the Gross Settlement Amount.

30.    **No Tax Advice**. Class Counsel, Lead Class Counsel, and Defendants' Counsel do not intend for this Settlement Agreement to constitute legal advice relating to the tax liability of any Settlement Collective and Class Member. To the extent that this Settlement Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

31.    **Calculation of Settlement Checks**. Within two (2) weeks after the Effective Date, the Settlement Administrator, based on the data provided by Defendants as set forth herein, will provide Lead Class Counsel and Defendants' Counsel with an Excel spreadsheet listing the names of all Settlement Collective and Class Members and their Settlement Payment amount, as well as any Employer Payroll Taxes that are calculated for Defendants to pay outside of the Gross Settlement Amount.

32.    **Settlement Payment Procedure**. Within thirty (30) days after the Effective Date or as soon as practicable, the Settlement Administrator will distribute all Settlement Payments to each Settlement Collective and Class Member with an accompanying cover letter in the form attached hereto as Exhibit D (titled "Notice That Your Settlement Check Is Enclosed"), explaining that checks must be cashed during the Acceptance Period. Settlement Payments to Settlement Class and Collective Members who are both a member of the Regular Rate Collective and Class and the Kronos Collective and Class, may be combined into one check by the Settlement Administrator to save costs. Settlement Collective and Class Members shall have until the end of the Acceptance Period to cash or deposit their Settlement Check. During the last sixty (60) days of the Acceptance Period, the Settlement Administrator may mail and email (to the extent an email address is available) reminders to any Settlement Collective and Class Members who have not yet cashed or deposited their Settlement Check to inform them of the 180-day deadline. At any point in the Acceptance Period, the Settlement Administrator shall have the authority to stop payment on a lost check and issue a new check to a Settlement Collective and Class Member upon request.

33.    **Filing of Opt-In List**. Following the Acceptance Period, the Settlement Administrator will file a declaration with the Court attaching a list of all Settlement Collective and Class Members who negotiated Settlement Checks. This list shall serve as consents under 29 U.S.C. § 216(b). The Court will retain jurisdiction following its issuance of the Final Approval Order for this purpose. Once all consents have been filed, the Court will dismiss the case with prejudice.

34.   **Remaining Monies**. If at the conclusion of the Acceptance Period plus sixty (60) days, there are any monies remaining in the QSF from the Gross Settlement Amount as a result of uncashed Settlement Checks attributable to the Regular Rate Collective and Class only, those funds shall be distributed to a non-profit *cy pres* recipient agreed upon by the Parties and approved by the Court in its Final Approval Order, unless such funds exceed $100,000, in which case the funds shall revert to Defendants in consideration of the fact that Defendants will receive no FLSA releases of claims from any person who does not cash or deposit their Settlement Check. For any monies remaining in the QSF from the Gross Settlement Amount as a result of uncashed Settlement Checks attributable to the Kronos Collective and Class only, those funds shall be distributed to a non-profit *cy pres* recipient agreed upon by the Parties and approved by the Court in its Final Approval Order. No funds from uncashed Settlement Checks attributable to the Kronos Collective and Class shall count toward the $100,000 amount mentioned above with respect to the Regular Rate Collective and Class.

35.   **Accounting for Settlement Checks**. The Settlement Administrator shall send an accounting of all uncashed Settlement Checks, as well as a list of the names of all Settlement Collective and Class Members who choose not to cash or deposit their Settlement Check to the Parties within thirty (30) days after the end of the Acceptance Period.

36.   **Class Counsel's Attorneys' Fees and Costs**. Lead Class Counsel, on behalf of Class Counsel, will file a motion for approval of attorneys' fees and costs fourteen (14) days before the Objection and Opt-Out Deadline or as otherwise ordered by the Court. Class Counsel may apply for attorneys' fees in the amount of up to one-third of the Regular Rate Settlement Amount and up to one-third of the Kronos Settlement Amount, as compensation for all work performed from the inception of the Litigation to its conclusion, including all future work in connection with the implementation of this Settlement Agreement, seeking preliminary and final approval of the Settlement Agreement by the Court, and overseeing the administration of the Settlement Agreement through the final dismissal of the Litigation with prejudice. Class Counsel may also seek an additional amount in reimbursement of their reasonable out-of-pocket costs in an amount up to $10,000 from the Regular Rate Settlement Amount and in an amount up to $10,000 from the Kronos Settlement Amount. Class Counsel's attorneys' fees and costs approved by the Court in the Final Approval Order will be paid out of the Gross Settlement Amount within one week after the Effective Date. Defendants will not oppose Class Counsel's motion for approval of attorneys' fees and costs so long as the amount of fees requested does not exceed one-third of the Regular Rate Settlement Amount

and one-third of the Kronos Settlement Amount, consistent with this paragraph. The Court's approval of attorneys' fees and costs shall have no bearing on the viability of the remainder of this Settlement Agreement, subject to appellate rights. Prior to the payment of attorneys' fees and costs, Lead Class Counsel shall provide an executed IRS Form W-9 to the Settlement Administrator.

37. **No Claim Based Upon Distributions or Settlement Payments in Accordance with this Settlement Agreement**. No person shall have any claim against Defendants, Class Counsel, Lead Class Counsel, Defendants' Counsel, or the Settlement Administrator based on distributions, payments, and actions in accordance with this Settlement Agreement and the Court's Orders.

## RELEASES

38. **Regular Rate Collective and Class Members' Released Claims**. Upon the Effective Date, each Regular Rate Collective and Class Member shall release and discharge Releasees, with respect to their FLSA claims, from any and all wage and hour claims, including but not limited to, all overtime claims based upon the failure to properly calculate the regular rate for purposes of calculating the overtime rate of pay, and including liquidated damages under the FLSA, and the time period for the FLSA release shall encompass March 2, 2019 through June 13, 2022. Each Regular Rate Collective and Class Member shall also release, with respect to claims arising under state law, all wage and hour claims, including but not limited to claims for unpaid overtime based upon the failure to properly calculate the regular rate for purposes of calculating the overtime rate of pay, including, without limitation, liquidated damages and all other penalties available under state law, for each state in which each Regular Rate Collective and Class Member performed work for Defendants during the time period encompassing the maximum applicable statute of limitations available under each state statute. This release includes a release of all wage and hour claims described above and unjust enrichment claims from the Eligible Settlement States that could have been brought by any Settlement Collective and Class Member based upon the facts and circumstances alleged in the Litigation. The Parties acknowledge and agree that only Regular Rate Collective and Class Members who choose to cash or deposit their Settlement Check thus affirmatively opting into the Litigation, shall release any FLSA claims.

39. **Kronos Collective and Class Members' Released Claims**. Upon the Effective Date, each Kronos Collective and Class Member shall release and discharge Releasees, with respect to their FLSA claims, only from minimum wage and unpaid overtime claims related to the Kronos Incident, including, without limitation, all, overtime, and liquidated damages under the FLSA for the period from

DocuSign Envelope ID: 4A60ADB6-DEE6-4838-A516-290ACE89C663

November 1, 2021 to January 31, 2022, including any continuing penalties or damages related to period at issue during the Kronos Incident. Each Kronos Collective and Class Member shall also release, with respect to claims arising under state law, all minimum wage, straight time, overtime, wage payment, and any common law claims such as for breach of contract or unjust enrichment related to the Kronos Incident, including, without limitation, all overtime, liquidated damages and all other penalties available under state law, for each state in which each Kronos Collective and Class Member performed work for Defendants during the time period from November 1, 2021 to January 31, 2022. This release includes a release of all wage and hour claims described above from all of the Eligible Settlement States that could have been brought by any Kronos Collective and Class Member related to the Kronos Incident. The Parties acknowledge and agree that only Kronos Collective and Class Members who choose to cash or deposit their Settlement Check thus affirmatively opting into the Litigation, shall release any FLSA claims.

40.     On the reverse side of each Settlement Check above the space for endorsement will be printed the following language:

> By depositing and/or cashing this check, I agree to be bound by the Settlement Agreement in *Anstead, et al. v. Ascension Health, et al.*, No. 3:22-cv-02353-MCR-HTC (N.D. Fla.) (the "Litigation"), and I consent to be a party-plaintiff in the Litigation under Section 216(b) of the Fair Labor Standards Act.

41.     Any Settlement Collective Member who signs, deposits, and/or cashes their Settlement Check shall be deemed an opt-in party plaintiff under the FLSA and all Eligible Settlement State laws for purposes of the Settlement.

42.     The Parties acknowledge and agree that the releases set forth above do not include any claim that cannot be released by private agreements. Moreover, nothing in this Agreement prohibits or prevents a Settlement Collective and Class Member from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding, or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission, the Securities and Exchange Commission, or the National Labor Relations Board. Nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, a Settlement Collective and Class Member's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. Nor does this release apply to any Settlement Collective and Class Member benefit, right, claim, demand, complaint or cause of action under 29 U.S.C.

1132(a)(1)(B), or benefits accrued and under any employee benefit plan.

## ADDITIONAL OBLIGATIONS AND TERMS

43.     **No Retaliation**. Defendants shall not retaliate or take any adverse action against any Settlement Collective and Class Member on the grounds that he/she is eligible to participate or does participate in the Settlement or cashes or deposits a Settlement Check.

44.     **Noninterference**. The Parties and their counsel will not encourage any person not to participate in the Settlement or object to the Settlement.

45.     **Defendants' Attorneys' Fees and Costs**. Defendants' attorneys' fees and costs in the Litigation shall be borne by Defendants.

46.     **Computation of Time**. For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day. The term "days" means calendar days unless otherwise noted.

47.     **Nullification of the Settlement Agreement**. In the event: (a) the Court does not preliminarily or finally approve the Settlement as provided herein; or (b) the Settlement does not reach the Effective Date for any other reason; the Parties agree to engage in follow up negotiations with the intent of resolving the Court's concerns that precluded approval, and if feasible, to resubmit the Settlement for approval within thirty (30) days. If the Settlement is not approved as resubmitted or if the Parties are unable to reach another agreement, then any Party may void this Agreement and the Parties will then return to their respective positions as they existed on the day before this Agreement was executed by any person, and this Agreement shall not be used in evidence or argument in any other part of the Litigation. In addition, upon voiding of the Agreement, the entire Gross Settlement Amount will be returned to Defendants except for any portion reasonably invoiced by the Settlement Administrator for work performed up to the date that the Settlement Agreement became void, which costs will be borne by Defendants.

48.     **Parties' Authority**. The Parties are each represented by competent and experienced counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Agreement. The signatories to this Settlement Agreement represent that they are fully authorized to enter this Settlement Agreement and bind the Parties to the terms and conditions contained herein.

49.  **Mutual Cooperation**. The Parties agree to cooperate with each other in good faith to accomplish the terms of this Settlement Agreement, and to take such action as may reasonably be necessary to implement the terms of this Settlement Agreement. Nothing stated herein is intended to limit counsels' ethical duties and obligations to their respective clients.

50.  **Construction**. The Parties acknowledge and agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties. As such, this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

51.  **Captions and Headings**. Paragraph titles or captions contained herein are inserted for convenience and reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.

52.  **Modification**. This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by all Parties.

53.  **Entire Agreement**. This Agreement contains the entire agreement of the Parties relating to their Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's counsel, are merged herein. No rights hereunder may be waived except in writing.

54.  **Binding On Assigns**. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

55.  **Governing Law**. This Settlement Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Florida, both in its procedural and substantive aspects. This Settlement Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Settlement Agreement or any specific term or condition thereof.

56.  **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Settlement Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this

DocuSign Envelope ID: 4A60ADB6-DEE6-4838-A616-220ACE89C663

Agreement.

57.    **Signatories and Counterparts**. Any Person executing this Agreement on behalf of a corporate signatory warrants and promises for the benefit of all Parties that he or she has been duly authorized by such corporation or company to execute the Agreement. The Agreement may be executed in counterparts, including by electronic signature, for example, DocuSign, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Agreement, which will be binding upon and effective as to all Parties as set forth herein. Copies of signatures will be considered the same as an original signature.

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: August 24, 2022

Chelsea E. Anstead
Plaintiff

Dated: August 24, 2022

Kerchai LeFlor
Plaintiff

BERGER MONTAGUE PC

Dated: August 24, 2022

Shanon J. Carson
Camille Fundora Rodriguez
Alexandra K. Piazza

VARNELL & WARWICK, P.A.

Dated: August 24, 2022

Janet Varnell

20

PARMET PC

Dated: August 24, 2022

Matthew S. Parmet

MORGAN & MORGAN

Dated: August 24, 2022

C. Ryan Morgan

ASCENSION HEALTH

Dated: August 24, 2022   By:

Title: EVP & General Counsel

ASCENSION HEALTH ALLIANCE

Dated: August 24, 2022   By:

Title: EVP & General Counsel

ASCENSIONCONNECT, LLC

Dated: August 24, 2022   By:

Title: EVP & General Counsel

SACRED HEART HEALTH SYSTEM, INC.

Dated: August 24, 2022

By: _Christine McCoy_____
6E45D75E2B4042A...

Title: EVP & General Counsel_____


JACKSON LEWIS, P.C.

Dated: August 24, 2022

8CF0C0591F5E423...

B. Tyler White
Eric R. Magnus

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| **CHELSEA E. ANSTEAD and KERCHAI LeFLOR, individually and on behalf of all others similarly situated,** | : : : : | **No. 3:22-CV-2553-MCR-HTC** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **ASCENSION HEALTH; ASCENSION HEALTH ALLIANCE, ASCENSIONCONNECT, LLC, and SACRED HEART HEALTH SYSTEM, INC.** | : : : : : | |
| **Defendants.** | : : | |

**NOTICE OF COLLECTIVE AND CLASS ACTION SETTLEMENT**
**FOR REGULAR RATE COLLECTIVE AND CLASS MEMBERS**

TO:   NAME
      ADDRESS
      ADDRESS

*The Court authorized this Notice of Collective and Class Action Settlement.*
*This is not a solicitation. This is not a lawsuit against you, and you are not being sued.*

**PLEASE READ THIS NOTICE CAREFULLY.**

| **1.** | **Why Should You Read This Notice?** |
|---|---|

You received this Notice of Collective and Class Action Settlement for Regular Rate Collective and Class Members ("Notice") because the records of Defendants Ascension Health, Ascension Health Alliance, AscensionConnect, LLC, and Sacred Heart Health System, Inc. (collectively, "Ascension") show that you were a non-exempt employee employed by at least one of the Defendants in the United States during the time period from March 2, 2019 to June 13, 2022, and worked more than forty hours in a workweek when you were paid a non-discretionary critical staffing bonus (the "Regular Rate Collective and Class"). There are approximately 47,131 members of the Regular Rate Collective and Class.

This Notice explains your right to participate in and share in the monetary proceeds of the Settlement affecting the Regular Rate Collective and Class, or to exclude yourself ("opt out") of the Settlement, or object to the Settlement. On [DATE], 2022, the United States District Court for

the Northern District of Florida granted preliminary approval of the Settlement as fair and reasonable. The Court will hold a Final Approval Hearing on [DATE] at [TIME], before the Honorable M. Casey Rodgers in Courtroom ▢ at U.S. Courthouse, One North Palafox St., Pensacola, FL 32502.

| **2.** | **What is this Lawsuit About?** |
|---|---|

The Lawsuit alleges that Ascension's non-exempt employees who received non-discretionary critical staffing bonuses between March 2, 2019 and June 13, 2022, and who worked more than forty hours in a workweek, were not paid overtime utilizing the appropriate "regular rate" to calculate the overtime rate. Specifically, the Lawsuit alleges that the critical staffing bonuses were not properly included when Defendants calculated the "regular rate" for purposes of calculating the overtime rate, and therefore, the amount of overtime compensation paid was incorrect in violation of the Fair Labor Standards Act ("FLSA") and state wage and hour laws, and unjustly enriched Defendants. Defendants deny any liability and assert that they complied with all applicable federal and state laws. Nevertheless, the Parties agreed to settle this dispute for the purpose of avoiding further litigation with its attendant risk, expense, and inconvenience.

| **3.** | **What Are the Terms of the Settlement?** |
|---|---|

Under the terms of the Settlement Agreement, Defendants have agreed to pay Sixteen Million Dollars ($16,000,000.00) (the "Regular Rate Settlement Amount") to settle the claims for unpaid overtime arising from the regular rate calculation issue described above based upon the Plaintiff's claim that critical staffing bonuses were not properly included in the Regular Rate for purposes of establishing the overtime rate of compensation.

Deductions from this amount will be made for (a) Plaintiffs' Counsel's attorneys' fees in an amount of up to one-third (1/3) of the Regular Rate Settlement Amount (*i.e.*, $5,333,333); (b) reimbursement of Plaintiffs' Counsel's reasonable costs in an amount not to exceed $10,000; and (c) the Settlement Administrator's reasonable fees and costs up to $112,500, all as approved by the Court. After subtracting these amounts, the balance of the funds (the "Regular Rate Net Settlement Amount") will be distributed by the Settlement Administrator among all Regular Rate Collective and Class Members and they will each automatically receive a *pro rata* Settlement Payment based on the amount of their respective unpaid overtime damages based upon the regular rate issue described above, as reflected in the payroll records supplied by Ascension. All Regular Rate Collective and Class Members will receive a minimum payment of $40.00.

Fifty percent (50%) of your payment from the Regular Rate Net Settlement Amount will be allocated to back wages and 50% will be allocated to liquidated damages. The Settlement Administrator will issue you an IRS Form W-2 for 50% of the payment and an IRS Form 1099 for the other 50% of the payment. Neither the Settlement Administrator nor the Parties can provide you with tax advice. You should contact your accountant or tax related advisors for any questions about taxes you may owe on these amounts.

**It is your responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of your Settlement Payment from the Settlement Administrator. If you fail to keep your address current, you may not receive your Settlement Payment.**

DocuSign Envelope ID: 4A60ADB6-DEE6-4B39-A516-290ACF89C663

| 4. | **What Claims Are Released by the Settlement?** |

If the Court grants final approval of the Settlement, the lawsuit will be dismissed with prejudice against Defendants, and each Regular Rate Collective and Class Member shall release and discharge Releasees, with respect to their FLSA claims, from any and all wage and hour claims, including but not limited to, all overtime claims based upon the failure to properly calculate the regular rate for purposes of calculating the overtime rate of pay, and including liquidated damages under the FLSA, and the time period for the FLSA release shall encompass March 2, 2019 through June 13, 2022. Each Regular Rate Collective and Class Member shall also release, with respect to claims arising under state law, all wage and hour claims and unjust enrichment claims, including but not limited to claims for unpaid overtime based upon the failure to properly calculate the regular rate for purposes of calculating the overtime rate of pay, including, without limitation, liquidated damages and all other penalties available under state law, for each state in which each Regular Rate Collective and Class Member performed work for Defendants during the time period encompassing the maximum applicable statute of limitations available under each state statute. The Parties acknowledge and agree that only Regular Rate Collective and Class Members who choose to cash or deposit their Settlement Payment thus affirmatively opting into the lawsuit, shall release any FLSA claims.

The term Releasees includes Defendants and their past, present, and future parent companies, affiliates and subsidiaries that employed Regular Rate Collective and Class Members, divisions, predecessors, successors, partners, owners, shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Ascension, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was or could have been named as a defendant in this matter.

| 5. | **What Are My Rights?** |

- **Do Nothing**: If you do nothing and the Court grants final approval of the Settlement, you will automatically receive your Settlement Payment. You will release your FLSA claim only if you cash or deposit your Settlement Payment, and you will release your state law claims as provided for in Section 4 above.

- **Opt-Out**: If you do not wish to be bound by the class action release above with respect to the state law claims, you must submit a written exclusion from the Settlement ("opt-out") which must contain your full name, address, telephone number, and email address, and must be signed individually by you. No opt-out request may be made on behalf of a group. The opt-out request must be sent by mail to the Settlement Administrator at ADDRESS, postmarked by [INSERT. **Any person who requests exclusion (opts out) of the settlement will not be entitled to any Settlement Payment and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon**.

- **Object**: If you wish to object to the Settlement, you must submit a written statement objecting to the Settlement. The statement must state the factual and legal grounds for your objection,

and must state your full name, address, telephone number, and email address, and must be signed by you. Any objection must be mailed to the Settlement Administrator at ADDRESS, postmarked by [INSERT]. If you submit a written objection, you may also, if you wish, appear at the Final Approval Hearing to discuss your objection with the Court and the Parties to the Lawsuit. Your written objection must state whether you will attend the Final Approval Hearing, and your written notice of your intention to appear at the Final Approval Hearing must be filed with the Court and served upon Class Counsel and Defendants' Counsel on or before DATE. If you wish to object to the Settlement but fail to return your timely written objection in the manner specified above, you shall be deemed to have waived any objection and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. The postmark date of mailing to Class Counsel and Defendants' counsel shall be the exclusive means for determining that an objection is timely mailed to counsel.

| **6.** | **Can Defendants Retaliate Against Me for Participating in this Lawsuit?** |
|---|---|

No. Your participation in this Settlement will in no way affect your work or employment with Defendants. It is unlawful and a violation of federal law for Defendants to take any adverse action against you as a result of your participation in this Lawsuit. In fact, Defendants encourage you to participate in the Settlement.

| **7.** | **Who Are The Attorneys Representing Plaintiff Anstead And The Regular Rate Collective and Class Members?** |
|---|---|

Plaintiff and the Regular Rate Collective and Class Members are represented by the following attorneys:

Shanon J. Carson
Camille Fundora Rodriguez
Alexandra K. Piazza
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3033
Email: scarson@bm.net
Email: crodriguez@bm.net
Email: apiazza@bm.net
Website: www.bergermontague.com

Janet Varnell
**VARNELL & WARWICK PA**
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Email: jvarnell@vandwlaw.com
Website: www.vandwlaw.com

| **8.** | **How Will the Attorneys Be Paid?** |
|---|---|

You do not have to pay the attorneys who represent the Regular Rate Collective and Class Members. The Settlement Agreement provides that Class Counsel will file a Motion for Attorneys' Fees and Costs with the Court as provided in Section 3 above, which the Court will consider at the Final Approval Hearing.

| **9.** | **Who May I Contact If I Have Further Questions?** |
|---|---|

DocuSign Envelope ID: 4A60ADB6-DEE6-4838-A616-290ACE89C663

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Settlement Administrator using the information below or Plaintiff's Counsel listed above. Please refer to the Ascension Health Wage & Hour Settlement.

*Ascension Health Wage & Hour Settlement Administrator*
[INSERT CONTACT INFO]

This Notice is only a summary. For more detailed information, you may review the Settlement Agreement, containing the complete terms of the proposed Settlement, which is available through the Settlement Administrator or Class Counsel, and publicly accessible and on file with the Court.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR ASCENSION HEALTH FOR INFORMATION ABOUT THE PROPOSED SETTLEMENT.**

DocuSign Envelope ID: 4A60ADB6-DEE6-4936-A516-290ACE89C663

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| **CHELSEA E. ANSTEAD and KERCHAI LeFLOR, individually and on behalf of all others similarly situated,** | : : : : | **No. 3:22-CV-2553-MCR-HTC** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **ASCENSION HEALTH; ASCENSION HEALTH ALLIANCE, ASCENSIONCONNECT, LLC, and SACRED HEART HEALTH SYSTEM, INC.** | : : : : : : | |
| **Defendants.** | : : | |

## NOTICE OF COLLECTIVE AND CLASS ACTION SETTLEMENT
## FOR KRONOS COLLECTIVE AND CLASS MEMBERS

TO:   NAME
      ADDRESS
      ADDRESS

*The Court authorized this Notice of Collective and Class Action Settlement.*
*This is not a solicitation. This is not a lawsuit against you, and you are not being sued.*

### PLEASE READ THIS NOTICE CAREFULLY.

| | |
|---|---|
| **1.** | **Why Should You Read This Notice?** |

You received this Notice of Collective and Class Action Settlement for Kronos Collective and Class Members ("Notice") because the records of Defendants Ascension Health, Ascension Health Alliance, AscensionConnect, LLC, and Sacred Heart Health System, Inc. (collectively, "Ascension") show that you worked as a non-exempt employee employed by one or more of the Defendants in the United States during the Kronos ransomware attack (the "Kronos Incident") that took place between November 2021 and January 2022 (the "Kronos Collective and Class"), and that you received a reconciliation payment for underpayments during the Kronos ransomware attack. The Kronos Incident affected Defendants' payment of wages and overtime compensation for non-exempt employees during three pay periods. There are approximately 57,559 members of the Kronos Collective and Class.

DocuSign Envelope ID: 4A60ADB6-DEE6-4838-A516-290ACE89C663

This Notice explains your right to participate in and share in the monetary proceeds of the Settlement that has been reached concerning the Kronos Incident, or to exclude yourself ("opt out") of the Settlement, or object to the Settlement. On [DATE], 2022, the United States District Court for the Northern District of Florida granted preliminary approval of the Settlement as fair and reasonable. The Court will hold a Final Approval Hearing on [DATE] at [TIME], before the Honorable M. Casey Rodgers in Courtroom _____ at U.S. Courthouse, One North Palafox St., Pensacola, FL 32502.

| 2. | What is this Lawsuit About? |
|---|---|

This Lawsuit alleges that the Kronos Collective and Class Members did not receive their proper wages and/or overtime compensation during the three (3) pay periods constituting the Kronos Incident between November 2021 and January 2022 in violation of the Fair Labor Standards Act ("FLSA") and state laws thus unjustly enriching Defendants. Defendants deny any liability and damages to anyone with respect to the allegations in the Lawsuit. Defendants further assert that in good faith, during the first pay period following the Kronos Incident, and before any litigation was filed, Defendants voluntarily reconciled and paid <u>all</u> unpaid wages and overtime compensation that was owed to Kronos Collective and Class Members arising from the Kronos Incident. Therefore, the Defendants assert that they have numerous and complete legal and factual defenses against all claims relating to the Kronos Incident, as Defendants' data was stolen and held for ransom by a third party. Defendants assert they acted in good faith at all times to ensure compliance with their legal obligations arising from the Kronos Incident, and therefore have no liability whatsoever under the FLSA and related state wage and hour laws for liquidated damages or penalties.

| 3. | What Are the Terms of the Settlement? |
|---|---|

Under the terms of the Settlement Agreement, Defendants have agreed to pay Three Million, Seven Hundred and Forty Thousand Dollars ($3,740,000.00) to settle the claims of the Kronos Collective and Class Members (the "Kronos Settlement Amount"). Deductions from this amount will be made for (a) Plaintiffs' Counsel's attorneys' fees in an amount of up to one-third (1/3) of the Kronos Settlement Amount (*i.e.*, $1,246,667); (b) reimbursement of Plaintiffs' Counsel's reasonable costs in an amount not to exceed $10,000; and (c) the Settlement Administrator's reasonable fees and costs up to $137,500, all as approved by the Court. After subtracting these amounts, the balance of the funds (the "Kronos Net Settlement Amount") shall be distributed such that all Kronos Collective and Class Members shall receive an equal share of the Kronos Net Settlement Amount, which will be a Settlement Payment of at least $40.00.

You will be issued an IRS Form 1099 for this Settlement Payment. We cannot provide you with any tax advice, and you should contact your accountant or tax related advisors for any questions about taxes you may owe on your Settlement Payment.

**It is your responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of your Settlement Payment from the Settlement Administrator. If you fail to keep your address current, you may not receive your Settlement Payment.**

2

| 4. | What Claims Are Released by the Settlement? |
|---|---|

If the Court grants final approval of the Settlement, the lawsuit will be dismissed with prejudice against Defendants, and each Kronos Collective and Class Member shall release and discharge Releasees, with respect to their FLSA claims, only from minimum wage and unpaid overtime claims related to the Kronos Incident, including, without limitation, all, overtime, and liquidated damages under the FLSA for the period from November 1, 2021 to January 31, 2022, including any continuing penalties or damages related to the period at issue during the Kronos Incident. Each Kronos Collective and Class Member shall also release, with respect to claims arising under state law, all minimum wage, straight time, overtime, wage payment, and any common law claims such as for breach of contract or unjust enrichment related to the Kronos Incident, including, without limitation, all overtime, liquidated damages and all other penalties available under state law, for each state in which each Kronos Collective and Class Member performed work for Defendants during the time period from November 1, 2021 to January 31, 2022.

The term Releasees includes Defendants and their past, present, and future parent companies, affiliates and subsidiaries that employed Settlement Collective and Class Members, divisions, predecessors, successors, partners, owners, shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Ascension, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was or could have been named as a defendant in this matter.

| 5. | What Are My Rights? |
|---|---|

- **Do Nothing**: If you do nothing and the Court grants final approval of the Settlement, you will automatically receive your Settlement Payment. You will release your FLSA claim only if you cash or deposit your Settlement Payment, and you will release your state law claims as provided for in Section 4 above.

- **Opt-Out**: If you do not wish to be bound by the class action release above with respect to the state law claims, you must submit a written exclusion from the Settlement ("opt-out") which must contain your full name, address, telephone number, and email address, and must be signed individually by you. No opt-out request may be made on behalf of a group. The opt-out request must be sent by mail to the Settlement Administrator at ADDRESS, postmarked by [INSERT. **Any person who requests exclusion (opts out) of the settlement will not be entitled to any Settlement Payment and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon**.

- **Object**: If you wish to object to the Settlement, you must submit a written statement objecting to the Settlement. The statement must state the factual and legal grounds for your objection, and must state your full name, address, telephone number, and email address, and must be signed by you. Any objection must be mailed to the Settlement Administrator at ADDRESS, postmarked by [INSERT]. If you submit a written objection, you may also, if you wish, appear at the Final Approval Hearing to discuss your objection with the Court and the Parties to the

Lawsuit. Your written objection must state whether you will attend the Final Approval Hearing, and your written notice of your intention to appear at the Final Approval Hearing must be filed with the Court and served upon Class Counsel and Defendants' Counsel on or before DATE. If you wish to object to the Settlement but fail to return your timely written objection in the manner specified above, you shall be deemed to have waived any objection and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. The postmark date of mailing to Class Counsel and Defendants' counsel shall be the exclusive means for determining that an objection is timely mailed to counsel.

| 6. | Can Defendants Retaliate Against Me for Participating in this Lawsuit? |
|---|---|

No. Your participation in this Settlement will in no way affect your work or employment with Defendants. It is unlawful and a violation of federal law for Defendants to take any adverse action against you as a result of your participation in this Lawsuit. In fact, Defendants encourage you to participate in the Settlement.

| 7. | Who Are The Attorneys Representing Plaintiffs And The Collective and Class Members? |
|---|---|

Plaintiffs and the Kronos Collective and Class Members are represented by the following attorneys:

Shanon J. Carson
Camille Fundora Rodriguez
Alexandra K. Piazza
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3033
Email: scarson@bm.net
Email: crodriguez@bm.net
Email: apiazza@bm.net
Website: www.bergermontague.com

C. Ryan Morgan, Esq.
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 16th Floor
PO Box 4979
Orlando, FL 32802-4979
Telephone:   (407) 420-1414
Email: rmorgan@forthepeople.com

Janet Varnell
**VARNELL & WARWICK PA**
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
jvarnell@vandwlaw.com
Website: www.vandwlaw.com

Matthew S. Parmet
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
Email: matt@parmet.law

Andrew R. Frisch
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Email: AFrisch@forthepeople.com

DocuSign Envelope ID: 4A60ADB6-DEE6-4838-A616-290ACE89C663

| 8. | How Will the Attorneys Be Paid? |
|---|---|

You do not have to pay the attorneys who represent the Kronos Collective and Class Members. The Settlement Agreement provides that Class Counsel will file a Motion for Attorneys' Fees and Costs with the Court as provided in Section 3 above, which the Court will consider at the Final Approval Hearing.

| 9. | Who May I Contact If I Have Further Questions? |
|---|---|

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Settlement Administrator using the information below or Plaintiffs' Counsel listed above. Please refer to the Ascension Health Wage & Hour Settlement.

*Ascension Wage & Hour Settlement Administrator*
[INSERT CONTACT INFO]

This Notice is only a summary. For more detailed information, you may review the Settlement Agreement, containing the complete terms of the proposed Settlement, which is available through the Settlement Administrator or Class Counsel, and publicly accessible and on file with the Court.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR TO ASCENSION FOR INFORMATION ABOUT THE PROPOSED SETTLEMENT.**

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| **CHELSEA E. ANSTEAD and** | : | |
| **KERCHAI LeFLOR, individually and** | : | **No. 3:22-CV-2553-MCR-HTC** |
| **on behalf of all others similarly** | : | |
| **situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ASCENSION HEALTH;** | : | |
| **ASCENSION HEALTH** | : | |
| **ALLIANCE,** | : | |
| **ASCENSIONCONNECT, LLC, and** | : | |
| **SACRED HEART HEALTH** | : | |
| **SYSTEM, INC.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

AND NOW, this ___ day of _____, 2022, upon consideration of Plaintiffs' Motion for Preliminary Approval of Settlement Agreement, the Court grants Plaintiffs' Motion and ORDERS as follows.

WHEREAS, Plaintiffs Chelsea E. Anstead and Kerchai LeFlor ("Plaintiffs") and Defendants Ascension Health, Ascension Health Alliance, AscensionConnect, LLC, and Sacred Heart Health System, Inc. (collectively, "Ascension" or "Defendants"), have entered into a Settlement Agreement which, together with the

Exhibits annexed thereto ("Settlement" or "Settlement Agreement"), sets forth the terms and conditions for a proposed collective and class action settlement of the above-captioned matter (the "Litigation") and for the Litigation's dismissal with prejudice upon the terms and conditions set forth therein;

WHEREAS, Plaintiffs and Defendants are collectively referred to as the "Parties";

WHEREAS, the Settlement is the product of informed, arm's-length negotiations over an extended period of time, and was achieved only after mediation and continued settlement negotiations between the Parties overseen by an experienced mediator, A. Lee Parks, Esq.;

WHEREAS, Plaintiffs filed a Motion for Preliminary Approval of Settlement Agreement (the "Motion") seeking an order: (i) preliminarily approving the Settlement Agreement; (ii) conditionally certifying the Settlement Collective and Class defined below pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 23(a) and (b)(3) for settlement purposes only; (iii) appointing Class Counsel; (iv) approving the proposed Notice of Settlement; (v) appointing Rust Consulting, Inc. as the Settlement Administrator; (vi) establishing deadlines and requirements for the submission of Opt-Outs and Objections to the Settlement; and (vii) establishing a date for the Final Approval Hearing;

WHEREAS, Defendants do not oppose Plaintiffs' Motion;

DocuSign Envelope ID: 4A60ADB6-DEE6-4939-A516-290ACE89C663

WHEREAS, the Court is familiar with and has reviewed the record, the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval of Settlement Agreement, and all supporting documents, and has found good cause for entering this Order;

WHEREAS, unless otherwise specified, all capitalized terms used herein have the same meanings as set forth in the Settlement Agreement;

NOW THEREFORE, it is hereby ORDERED and ADJUDGED as follows:

1.      The Parties' Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to FED. R. CIV. P. 23(e), and as a fair and reasonable resolution of *a bona fide* dispute under the Fair Labor Standards Act.

2.      For settlement purposes, the Court conditionally certifies the following classes as a collective action pursuant to 29 U.S.C. § 216(b), finding the members to be similarly situated for purposes of settlement, and as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3), pending final approval of the Settlement Agreement:

        a.      All current and former non-exempt employees employed by any or all of the Defendants in the United States during the time period from March 2, 2019 through June 13, 2022, who worked more than forty hours in any workweek and who were not paid overtime at a rate of one-and-one-half times their "regular hourly rate" for all hours worked over forty taking into account any non-discretionary critical staffing bonuses (hereinafter, the "Regular Rate Collective and Class" and each a "Regular Rate Collective and Class Member"); and

        b.      All current and former non-exempt employees employed by any or all of the Defendants in the United States at any time during

3

the Kronos ransomware attack between November 2021 and January 2022 who received a reconciliation payment for underpayments during the Kronos ransomware attack (hereinafter, the "Kronos Collective and Class" and each a "Kronos Collective and Class Member").

3.       The Regular Rate Collective and Class and the Kronos Collective and Class are collectively referred to herein as the Settlement Collective and Class.

4.       In support thereof, the Court provisionally finds as follows:

a.       The number of Regular Rate Collective and Class Members (47,131 members) and the number of Kronos Collective and Class Members (57,559 members) is too numerous for joinder to be practicable;

b.       There are questions of law and fact common to each class that predominate over individualized questions for settlement purposes. With respect to the Regular Rate Collective and Class, those common issues include how Defendants treated critical staffing bonuses in calculating overtime pay, how Defendants should have treated critical staffing bonuses in calculating overtime pay, whether Defendants acted in good faith, and whether Defendants were unjustly enriched. With respect to the Kronos Collective and Class, those common issues include the underlying facts comprising the Kronos Incident, what measures Defendants took in response to the Kronos ransomware attack, whether Defendants acted in good faith, and whether Defendants were unjustly enriched;

c.       Plaintiffs' claims are typical of the claims of the Settlement

DocuSign Envelope ID: 4A60ADB6-DEE6-4838-A516-220ACE89C663

Collective and Class Members they seek to represent for purposes of the Settlement;

> d.    Plaintiffs and Class Counsel have fairly and adequately represented the interests of the Regular Rate Collective and Class, and the Kronos Collective Class, and will continue to do so;

> e.    A class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 of the Federal Rules of Civil Procedure; and

> f.    because the Litigation is being settled rather than litigated, the Court need not consider manageability issues that might otherwise be presented by the trial of a class action involving the issues in the Litigation.

5.    Plaintiff Chelsea E. Anstead is appointed as the representative of the Regular Rate Collective and Class, and Plaintiffs Chelsea E. Anstead and Kerchai LeFlor are appointed as the representatives of the Kronos Collective and Class.

6.    Berger Montague PC and Varnell & Warwick, P.A. are appointed as Class Counsel on behalf of the Regular Rate Collective and Class, and Berger Montague PC, Varnell & Warwick, P.A., Parmet PC, and Morgan & Morgan are appointed as Class Counsel on behalf of the Kronos Collective and Class, with Berger Montague PC and Varnell & Warwick, P.A. acting as Lead Class Counsel.

7.    Rust Consulting, Inc. is preliminarily appointed as the Settlement Administrator and shall perform all duties and tasks assigned to the Settlement

Administrator in the Settlement Agreement. The costs of notice and settlement administration that were submitted to the Court are preliminarily approved.

8. The Notice of Settlement, including the Regular Rate Notice of Settlement attached as Exhibit A to the Settlement Agreement, and the Kronos Incident Notice of Settlement attached as Exhibit B to the Settlement Agreement, are approved and shall be distributed by the Settlement Administrator pursuant to the terms of the Settlement Agreement.

9. The following schedule and procedures for completing the settlement approval process as set forth in the Parties' Settlement Agreement are hereby approved:

| Defendants to Send CAFA Notice | Within ten business days after the submission of the Settlement Agreement to the Court. |
|---|---|
| Defendants Provide Settlement Collective and Class Contact Information | Within seven calendar days after issuance of the Preliminary Approval Order. |
| Notice Sent by Settlement Administrator | Within ten days of receiving the Settlement Collective and Class List. |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs | Due two weeks before the Objection and Opt-Out Deadline. |
| Deadline to postmark objections or requests for exclusion | Forty-five days after the Notice of Settlement is initially mailed by the Settlement Administrator. |
| Plaintiffs' Motion for Final Approval | Due two weeks prior to Final Approval Hearing Date. |

10. The Final Approval Hearing is hereby set for _____ [approximately 80-90 days after the date of this Order] at _____, in Courtroom

____, U.S. Courthouse, One North Palafox St., Pensacola, FL 32502.

11.     Pending further order of the Court, all litigation activity and events except those contemplated by this Order or in the Settlement Agreement, are stayed, and all hearings, deadlines, and other proceedings in the Litigation, except the Final Approval Hearing and the matters set forth in this Order, are vacated.

BY THE COURT:

Dated: _____, 2022          _____
                                                          Honorable M. Casey Rodgers
                                                          United States District Judge

# EXHIBIT D

DocuSign Envelope ID: 4A60ADB6-DEE6-4830-A516-220ACE89C663

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**CHELSEA E. ANSTEAD and KERCHAI**    :
**LeFLOR, individually and on behalf of all**    :   **No. 3:22-CV-2553-MCR-HTC**
**others similarly situated,**    :
    :
         **Plaintiffs,**    :
    :
   **v.**    :
    :
**ASCENSION HEALTH; ASCENSION**    :
**HEALTH ALLIANCE,**    :
**ASCENSIONCONNECT, LLC, and**    :
**SACRED HEART HEALTH SYSTEM,**    :
**INC.**    :
    :
         **Defendants.**    :
    :

## NOTICE THAT YOUR SETTLEMENT CHECK IS ENCLOSED

TO:    [Name]
       [Address]
       [Address]

       We write on behalf of Rust Consulting, Inc., the Court-appointed Settlement Administrator in the above-captioned Litigation. You previously received a Notice of Settlement informing you about the Settlement. On [DATE], the U.S. District Court for the Northern District of Florida granted final approval of the Settlement.

       **Your Settlement Check is enclosed, constituting a payment in the amount of [INSERT AS APPLICABLE] for the Regular Rate Settlement and [INSERT AS APPLICABLE] for the Kronos Incident Settlement. Please note that your Settlement Check will automatically expire and become void in 180 days on [INSERT DATE]. Therefore, you are encouraged to please cash or deposit your Settlement Check as soon as possible.**

       You may contact us using the information below with any questions or if you lose your Settlement Check and need to have it reissued. Thank you.

*Ascension Health Wage & Hour Settlement Administrator*
*c/o Rust Consulting, Inc.*
[INSERT CONTACT INFORMATION]